Case No. 21-3151

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

**JEFFREY J. SPERRY**,
*Plaintiff-Appellant*

v.

**RAYMOND ROBERTS, *et al.***
*Defendants-Appellees*

## BRIEF OF DEFENDANTS-APPELLEES RAYMOND ROBERTS, *et al.*

Appeal from the United States District Court for the District of Kansas
Case No. 18-CV-3120-HLT-GEB
Honorable Holly L. Teeter, United States District Judge

OFFICE OF KANSAS ATTORNEY
GENERAL DEREK SCHMIDT
Michael Duenes, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
(785) 296-2215
michael.duenes@ag.ks.gov

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................. iv

PRIOR OR RELATED APPEALS .....................................viii

GLOSSARY ................................................................... ix

JURISDICTIONAL STATEMENT ....................................1

STATEMENT OF THE ISSUES......................................1

STATEMENT OF THE CASE ...........................................2

SUMMARY OF ARGUMENT .........................................5

ARGUMENT ...................................................................7

I.    The  district  court  properly  found  that  Sperry's  official
      capacity claims are  barred  by  the  Eleventh  Amendment.
      (Sperry's Issues I and V.a.)...........................................7

*Standard of Review*...........................................................7

*Discussion*........................................................................8

    *A.*  *Sperry has waived his claim under Issue I.. .....................9*

    *B.*  *Under Issue V.a., the district court properly held that*
      *Sperry's  official-capacity  claims  are  barred  by  the*
      *Eleventh Amendment.*............................................10

II.   The district court correctly held that Defendants are entitled
      to qualified immunity. .................................................12

*Standard of Review*..........................................................13

    *A.*  *Sperry has waived his qualified immunity claim*........13

      *B.*     *Sperry's qualified immunity claim fails on the merits.*................................................................14

**III. The district court properly held that Sperry failed to show the court had jurisdiction over his state law claims.**...........15

*Standard of Review*................................................................17

      *A.*     *Sperry's complaint does not specify punitive damages*........................................................16

      *B.*     *Sperry cannot recover damages suffered by other inmates*......................................................18

**IV. The district court correctly denied Sperry's motion to strike**.............................................................................19

*Standard of Review*................................................................20

      *A.*     *Federal law allows successive summary judgment motions*....................................................20

      *B.*     *Sperry misunderstands the federal rules for motions to strike*............................................................21

**V. The district court properly found that Sperry's official capacity claims for injunctive relief also fail.** ........................24

      *a. Eleventh Amendment Immunity*......................................7

      *b. Statute of Limitations*.......................................................7

      *c. Exhaustion of Legal Theories* .........................................7

      *d. Failure to State a Constitutional Claim*.........................7

**CONCLUSION**........................................................................35

**CERTIFICATE OF COMPLIANCE**......................................................**36**

**CERTIFICATE OF DIGITAL SUBMISSION** ...................................**36**

**CERTIFICATE OF SERVICE** ...........................................................**37**

**10th Cir. R. 28.2(B) ATTACHMENTS**...............................................**38**

**Fed. R. App. P. Rule 28(f) ATTACHMENTS** ....................................**38**

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Adler v. Wal-Mart Stores, Inc.*,
   144 F.3d 664 (10th Cir. 1998) ................................................... 7, 10, 13

*Animal Legal Defense Fund v. Kelly*,
   9 F.4th 1219 (10th Cir. 2021) ............................................................ 29

*Augustus v. Board of Public Instruction of Escambia County, Fla.*,
   306 F.2d 862 (5th Cir. 1962) .............................................................. 22

*Barrett v. Univ. of N.M. Bd. of Regents*,
   562 Fed. Appx. 692 (10th Cir. 2014) .................................................. 9

*Brown v. Legal Found. Of Wash.*,
   538 U.S. 216 (2003) ........................................................................... 34

*Crawford v. Tilley*,
   15 F.4th 752 .................................................................................... 23

*DeSpain v. Uphoff*,
   264 F.3d 965 (10th Cir. 2001) ........................................................... 13

*Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*,
   663 F.3d 1124 (10th Cir. 2011) .......................................................... 20

*Eyman v. Repicky*,
   2011 WL 5878398 (N.D. Ohio 2011) .................................................. 18

*Falley v. Friends University*,
   787 F. Supp. 2d 1255 (D. Kan. 2011) ................................................. 22

*Fields v. Oklahoma State Penitentiary*,
   511 F.3d 1109 (10th Cir. 2007) .......................................................... 25

*Frederick v. Hartford Underwriters Ins. Co.*,
   683 F.3d 1242 (10th Cir. 2012) .......................................................... 17

*Garrett v. Selby Connor Maddux & Janer,*
    425 F.3d 836 (10th Cir. 2005)............................................................29

*Green v. Napolitano,*
    627 F.3d 1341 (10th Cir. 2010).........................................................16

*Grissom v. Roberts,*
    902 F.3d 1162 (10th Cir. 2018).........................................................14

*Hall v. Bellmon,*
    935 F.2d 1106 (10th Cir. 1991)..............................................8, 12, 31

*Hastings v. Campbell,*
    47 Fed. Appx. 559 (10th Cir. 2002)......................................................8

*Hatfield v. Scott,*
    306 F.3d 223 (5th Cir. 2002).............................................................33

*Hayes v. SkyWest Airlines, Inc.,*
    12 F.4th 1186 (10th Cir. 2021)..........................................................20

*Hickey v. Brennan,*
    969 F.3d 1113 (10th Cir. 2020)...........................................................7

*Hoffman v. Tonnemacher,*
    593 F.3d 908 (9th Cir. 2010).............................................................20

*Irive v. Masto,*
    2011 WL 6735880 (D. Nev. 2011)......................................................35

*Jernigan v. Stuchell,*
    304 F.3d 1030 (10th Cir. 2002).........................................................25

*Johnson v. Johnson,*
    385 F.3d 503 (5th Cir. 2004).............................................................26

v

*Jones v. Bock*,
   549 U.S. 199 (2007) ................................................................26

*L&M Enters., Inc. v. BEI Sensors & Sys. Co.*,
   231 F.3d 1284 (10th Cir. 2000) ............................................11

*Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*,
   436 F.3d 662 ..........................................................................21

*Lovell v. State Farm Mut. Auto Ins. Co.*,
   466 F.3d 893 (10th Cir. 2006) ..............................................18

*Matson v. Kansas Dept. of Corr.*,
   346 P.3d 327 (Kan. 2015) ......................................................31

*May v. Segovia*,
   929 F.3d 1223 (10th Cir. 2019) ..............................................8

*McCoy v. Meyers*,
   887 F.3d 1034 (10th Cir. 2018) ..........................................7, 8

*McIntyre v. Bayer*,
   339 F.3d 1097 (9th Cir. 2003) ..............................................34

*Phillips v. Washington Legal Foundation*,
   524 U.S. 156 (1998) ...................................................12, 15, 33

*Pilkin v. Sony Interactive Entertainment LLC*,
   2021 WL 2451299 (D.C. Cir. 2021) ......................................22

*Richison v. Ernest Group, Inc.*,
   634 F.3d 1123 (10th Cir. 2011) ............................................24

*Searcy v. Social Sec. Admin.*,
   956 F.2d 278, 1992 WL 43490 (10th Cir. 1992) ..................22

*SFF-TIR, LLC v. Stephenson*,
   262 F. Supp. 3d 1165 (N.D. Okla. 2017) ..............................18

*Silva v. Tegrity Personnel Services, Inc.,*
   986 F. Supp. 2d 826 (S.D. Texas 2013) ................................................. 18

*Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.,*
   989 F.3d 747 (10th Cir. 2021) .............................................................. 7

*Singleton v. Wulff,*
   428 U.S. 106 (1976) ............................................................................ 24

*Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC,*
   887 F.3d 1003 (10th Cir. 2018) ........................................................... 16

*Stanbury Law Firm v. IRS,*
   221 F.3d 1059 (8th Cir. 2000) ............................................................. 22

*Toevs v. Milyard,*
   563 Fed. Appx. 640 (10th Cir. 2014) ....................................... 26, 28, 29

*United States v. Fisher,*
   38 F.3d 1144 (10th Cir. 1994) ............................................................. 19

*Vance v. Barrett,*
   345 F.3d 1083 (9th Cir. 2003) ............................................................. 33

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
   449 U.S. 155 (1980) ...................................................................... 12, 14

*Whitford v. Boglino,*
   63 F.3d 527 (7th Cir. 1995) ................................................................ 21

*Woodford v. Ngo,*
   548 U.S. 81 (2006) ........................................................................ 25, 28

*Woodman of the World Life Ins. Society v. Manganaro,*
   342 F.3d 1213 (10th Cir. 2003) ........................................................... 17

Statutes

28 U.S.C. § 1291 ...................................................................................1

42 U.S.C. § 1983 ...................................................................................1

42 U.S.C. § 1985 ...................................................................................5

42 U.S.C. § 1997e ...............................................................................25

Kan. Stat. Ann. § 58a-101 ..................................................................31

Kan. Stat. Ann. § 58a-709 ..................................................................32

Kan. Stat. Ann. § 76-175 ............................................. 11, 30, 31, 32

Kan. Stat. Ann. § 76-173 ....................................................................30

Kan. Stat. Ann. § 76-171 ....................................................................31

U.S. CONST. amend. V ......................................................................34

Rules

Fed. R. Civ. P. 1 .................................................................................20

Fed. R. Civ. P. 7 .................................................................................22

Fed. R. Civ. P. 12 ..................................................................19, 21, 22

Fed. R. Civ. P. 56 .........................................................................7, 21

# PRIOR OR RELATED APPEALS

None

## GLOSSARY

IMPP:        Inmate Management Policy and Procedure

KDOC:        Kansas Department of Corrections

KUTC:        Kansas Uniform Trust Code

PLRA:        Prison Litigation Reform Act

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because Jeffrey Sperry asserted claims under 42 U.S.C. § 1983. This appeal arises from the district court's August 26, 2020 Memorandum and Order, granting in part and denying in part Defendants' motion to dismiss, or in the alternative, for summary judgment, and its July 13, 2021 Order denying Sperry's motion to alter or amend judgment and granting Defendants' motion for summary judgment. Sperry submitted a timely notice of appeal on August 10, 2021. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Sperry's appeal, which comes from a final judgment disposing of all his claims.

## STATEMENT OF THE ISSUES

**I.    The district court properly found that Sperry's official capacity claims are barred by the Eleventh Amendment. (Sperry's Issues I and V.a.)[1]**

**II.   The district court correctly held that Defendants are entitled to qualified immunity.**

**III.  The district court properly held that Sperry failed to show the court had jurisdiction over his state law claims.**

---

[1] Defendants note Sperry's issues in a parenthetical here to avoid confusion. This is the only heading where two of Sperry's Issues are combined.

IV.  **The district court correctly denied Sperry's motion to strike.**

V.   **The district court properly found that Sperry's official capacity claims for injunctive relief also fail.**

## STATEMENT OF THE CASE

Plaintiff-Appellant, Jeffrey Sperry, is an inmate in the custody of the Kansas Department of Corrections ("KDOC") and was housed at various Kansas correctional facilities from 2012 through 2017. (ROA at 42-43). In November 2017, Sperry filed an amended § 1983 complaint alleging 14 counts against 24 KDOC defendants. (ROA at 11-31). However, Sperry's 14 counts were severed into several separate lawsuits, with Count IX forming the basis of this suit. (ROA at 212).

In Count IX, Sperry alleged that beginning in February 2012, Defendants Raymond Roberts, Johnnie Goddard, Rex Pryor, James Heimgartner, and Lindsey Wildermuth embezzled the interest from his financial accounts, thereby violating his Fifth Amendment rights under the Takings Clause; his Fourteenth Amendment due process and equal protection rights; and the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (ROA at 25). He also alleged that Defendants conspired to violate his civil rights and committed the torts

of conversion, outrageous conduct, breach of fiduciary duty, and negligence under federal and state law. (ROA at 25).

Sperry requested monetary damages in the total amount of interest taken from every inmate's trust account, declaratory judgment stating that Defendants violated his rights, and injunctive relief requiring Defendants to immediately begin paying him his proper interest on his inmate trust account. (ROA at 32-33).

Defendants filed a motion to dismiss, or in the alternative, for summary judgment, raising multiple arguments. (ROA at 162-187). Sperry filed a response, to which the Defendants replied. (ROA at 191-210). The district court granted the motion in part and denied it in part, dismissing Sperry's claims for damages against Defendants in their official capacities; holding that Defendants are entitled to qualified immunity for the claims against them in their individual capacities; and dismissing the state law tort claims. (ROA at 217, 220, 224). However, the court did not dismiss as moot Sperry's request for injunctive relief. (ROA at 221-22).

Because the court held that Defendants are entitled to qualified immunity, it found it unnecessary to consider their other arguments, *i.e.*,

Sperry failed to state a claim; failed to exhaust administrative remedies on every claim but the Takings Clause violation; violated the statute of limitations; and failed to allege Defendants' personal participation in the alleged violations. (ROA at 220).

In response to the district court's decision, Sperry filed a motion to alter or amend judgment, arguing that Defendants are not entitled to Eleventh Amendment immunity or qualified immunity, and that he satisfied the "amount in controversy" requirement for diversity jurisdiction. (ROA at 233-36). The Defendants filed a response. (ROA at 278-82).

Defendants also filed a motion for summary judgment with a memorandum in support, as well as a "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion[.]" (ROA at 237-70). Sperry responded to the motion, to which Defendants replied. (ROA at 285-91, 296-302). In addition to his response, Sperry filed a motion to strike Defendants' summary judgment motion. (ROA at 283-84). Defendants opposed the motion to strike. (ROA at 292-95).

A different district court judge denied Sperry's motion to alter or amend judgment. (ROA at 320). The court granted Defendants' motion

for summary judgment by (1) dismissing without prejudice all claims against Goddard, Pryor, Heimgartner, and Wildermuth in their official capacities pursuant to the Eleventh Amendment; (2) dismissing without prejudice Sperry's Fourteenth Amendment, RICO Act, and 42 U.S.C. § 1985 claims for injunctive relief against Roberts in his official capacity for failure to exhaust administrative remedies; (3) finding in Roberts' favor in his official capacity on Sperry's Takings Clause claim; and (4) dismissing without prejudice, to the extent necessary, any surviving state law claim because the court declined supplemental jurisdiction. (ROA at 320). The court also denied Sperry's motion to strike. (ROA at 303-04, 320).

Sperry timely appeals. (ROA at 322-23).

## SUMMARY OF ARGUMENT

The district court properly found that Defendants were entitled to relief on all the claims lodged by Sperry, and its decision should be affirmed.

The district court correctly held that Sperry's official-capacity claims are barred by the Eleventh Amendment because Sperry failed to

5

adequately allege that the state officer had a duty to enforce the statute in question and the officer's willingness to do so.

The district court correctly held that Defendants are entitled to qualified immunity. On appeal, Sperry has waived his qualified immunity argument. And even on the merits, he has failed to apply the test for qualified immunity.

The district court rightly found it had no jurisdiction over Sperry's state law claims because he failed to satisfy the amount-in-controversy requirement for diversity jurisdiction.

The district court correctly denied Sperry's motion to strike Defendants' second summary judgment motion because Sperry's motion was devoid of any legal basis. Likewise, the district court properly ruled against Sperry's official capacity claims for injunctive relief because they amount to bald assertions, and therefore, lack any factual or legal basis. This Court should affirm.

## ARGUMENT

**I.    The district court properly found that Sperry's official capacity claims are barred by the Eleventh Amendment. (Appellant's Issues I and V.a.)**

### Standard of Review

This Court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). This Court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *McCoy*, 887 F.3d at 1044. "[T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant." *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation and quotations omitted).

Facts must be identified by reference to affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 671 (10th Cir. 1998). Relying on mere pleadings or conclusory allegations is not enough. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, "while courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 Fed. Appx. 559, 560 (10th Cir. 2002) (citing *Hall*, 935 F.2d at 1110); *see McCoy*, 887 F.3d at 1044. ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (Internal quotations omitted)).

## Discussion

Sperry advances his Eleventh Amendment immunity claims under his Issues I and V.a. of his Opening Brief.[2] (Opening Br. at 3, 6). Under Issue I, he asserts that because he "did not seek monetary damages against defendants in their official capacities, the District Court's order of dismissal based on Eleventh Amendment immunity was in error." (Opening Br. at 3).

---

[2] Sperry has four subheadings under his Issue V. (Opening Br. at 6-9). For purposes of this brief, they will be designated as subsections V.a. through V.d.

Under Issue V.a., Sperry argues that prison officials acting in their official capacities are not entitled to Eleventh Amendment immunity when the plaintiff seeks declaratory or injunctive relief. (Opening Br. at 6). He further asserts that Defendants had the authority and ability to take action on his claim that interest was being taken unlawfully from the prisoners' trust account. (*Id*.) Sperry fails to adequately brief Issue I, and his claims under Issue V.a. lack both a factual and legal basis.

### A.  *Sperry has waived his claim under Issue I.*

The district court acknowledged that Sperry was entitled to seek injunctive relief on his federal claims against Defendants in their official capacities. (ROA at 310-11). But the court also held that Sperry "must show that the state official has the power to perform the required act and demonstrate [*sic*] a willingness to enforce the statute in question to overcome the jurisdictional bar of Eleventh Amendment immunity." (ROA at 312); *see Barrett v. Univ. of N.M. Bd. of Regents*, 562 Fed. Appx. 692, 694 (10th Cir. 2014) (holding that "[a] plaintiff must adequately allege the individual official's duty to enforce the statute in question and a demonstrated willingness to do so").

Under this issue, Sperry never addresses whether Defendants had the power to perform the required act and demonstrated a willingness to do so. Moreover, his statement that he "did not seek monetary damages against defendants in their official capacities" is irrelevant because he has not asserted a proper basis for obtaining *any* relief under the Eleventh Amendment.[3] (Opening Br. at 3). Thus, he has waived this issue by failing to adequately brief it, *see Adler*, 144 F.3d at 679, and even on the merits, his claim fails.

### B. Under Issue V.a., the district court properly held that Sperry's official-capacity claims are barred by the Eleventh Amendment.

Again, the district court recognized the exception to Eleventh Amendment immunity which allows official capacity suits against state officers if the plaintiff seeks injunctive relief. (ROA at 311). But as the district court further noted, and Sperry implicitly acknowledges, the plaintiff in such cases must adequately allege the state officer's duty to

---

[3] In any case, Sperry's Complaint states that he is suing all Defendants in their "individual and official capacity," and his separate requests for relief (*i.e.*, injunctive, declaratory, and compensatory) do not distinguish between the individual and official capacities of Defendents. (ROA at 12-14, 32-33). Hence, Sperry did indeed seek monetary damages against Defendants in their official capacities.

enforce the statute in question and a demonstrated willingness to do so. (ROA at 312 (citing *Barrett*, 562 Fed. Appx. at 694.)).

Here, the undisputed facts show that the pooled inmate trust fund account is operated by the KDOC Centralized Income Banking Unit. (ROA at 266). Under Kan. Stat. Ann. § 76-175 and Inmate Management Policy and Procedure ("IMPP") 04-103, the KDOC manages the inmate trust fund accounts. (ROA at 149-51, 267). In 2005, the KDOC received approval to consolidate the inmate trust fund accounts into a centralized account managed by a single designee acting for the KDOC. (ROA at 272); Kan. Stat. Ann. § 76-175. Melissa Brooke is the KDOC's designee for managing trust fund accounts, and she is not a party to Sperry's suit. (ROA at 266). Indeed, Sperry has previously conceded that Defendants "do not have direct control over [his] money[.]" (ROA at 286).

In the face of these facts, Sperry merely repeats his conclusory and unsupported assertion that Defendants "had authority to take action to correct the unlawful taking of the interest from the trust account, or to present the issue to someone who could[.]" (Opening Br. at 6; ROA at 286). But "unsupported conclusory allegations … do not create a genuine issue of fact." *L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284,

11

1287 (10th Cir. 2000). *See Hall*, 935 F.2d at 1111 ("[C]onclusory and self-serving affidavits are not sufficient."). Sperry does not demonstrate that any of the Defendants have authority or control over the pooled inmate trust fund account. He does not show that any of the Defendants have the necessary policy-making authority within the KDOC to address his claim. Hence, the district court properly found that Sperry provided no factual basis for his argument and did not demonstrate that the named Defendants have authority to initiate his desired changes or have shown they are willing to do so. (ROA at 313). This Court should affirm the district court's holding on this issue.

## II.   The district court correctly held that Defendants are entitled to qualified immunity.

Sperry claims the district court erred by dismissing his federal claims for monetary damages based on qualified immunity. (Opening Br. at 3). He argues it is well-established that prison officials cannot embezzle or otherwise take inmates' money. (*Id.*) He also relies on *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), for the proposition that "the interest earned on a trust fund belongs to the owners of the principle and 'a State, by *ipse dixit*, may not transform private property

12

(the interest) into public property without compensation, even for the limited duration of the deposit in court.'" (*Id*.) But Sperry has waived this issue by failing to adequately brief it, and even on the merits, he fails to show any error in the district court's holding on qualified immunity.

### Standard of Review

This Court reviews de novo a district court's ruling on qualified immunity, viewing the evidence in the light most favorable to Sperry. *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).

### A.    Sperry has waived his qualified immunity claim.

To overcome Defendants' qualified immunity, Sperry must establish that "(1) Defendants' conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971.

Sperry has failed to adequately brief this issue, thereby waiving it. *Adler*, 144 F.3d at 679. Neither Defendants nor the district court asserted that the law against prison officials embezzling or otherwise taking prisoners' money was not well-established, as Sperry argues. (Opening Br. at 3). Rather, the district court explicitly framed the question presented: "[W]as it clearly established at the time of Defendants' alleged

misconduct (February 2012 to June 2017) that it was unlawful to use interest earned from Sperry's inmate account to pay bank fees associated with his own account[?]" (ROA at 220). Sperry does not address this specific question.

Moreover, Sperry fails to expressly apply the "clearly established" prong of the qualified immunity standard. He does not attempt to explain how *Webb's Fabulous Pharmacies, Inc.* and *Phillips* are analogous to his case, and thus, applicable to his claim. Simply put, Sperry's argument lacks the necessary development to warrant consideration. *See Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018) ("It is a party's duty to develop an argument if it wishes a determination by this court.").

## B.   *Sperry's qualified immunity claim fails on the merits.*

Even if this Court considers the merits of Sperry's claim, he has assumed what he must prove, namely, that Defendants in fact embezzled money from him. He does not provide any authority showing that an inmate has a *per se* property interest in the interest generated by the inmate trust account. Neither of the Supreme Court cases on which he relies holds that inmates enjoy unlimited free banking, as well as all of the accrued interest on top of it. *See Webb's Fabulous Pharmacies, Inc.*,

14

449 U.S. at 165 ("express[ing] no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest could be the only return to the county for services it renders"); *Phillips*, 524 U.S. at 171 (noting that it there is no quibble with "the interest income generated by IOLTA accounts [being] transferred to the State as payment 'for services rendered' by the State").

The district court rightly determined that Sperry failed to show that Defendants violated a clearly established law on this point at the time of the alleged conduct. (ROA at 220). He has also failed to do so in his Opening Brief. For these reasons, this Court should affirm.

### III. The district court properly held that Sperry failed to show the court had jurisdiction over his state law claims.

Sperry claims the district court erred in dismissing his state law claims based on a failure to meet the amount-in-controversy requirement. (Opening Br. at 4). Specifically, he argues that the court did not include his $1 million punitive damages request in the amount-in-controversy calculation. (*Id*.) He also argues that the amount-in-controversy calculation "must include all of the money the defendants illegally took from the inmate trust fund, the total disgorgement amount that must be paid back if Plaintiff is successful." (*Id*.)

15

### *Standard of Review*

This Court reviews de novo a district court's dismissal of an action for lack of subject-matter jurisdiction. *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010). "The party invoking a court's jurisdiction bears the burden of establishing it." *Id*. To determine whether Sperry met his burden, this Court "look[s] to the face of the complaint, ignoring mere conclusory allegations of jurisdiction." *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1014 (10th Cir. 2018) (internal quotation marks omitted).

### A.   *Sperry's complaint does not specify punitive damages.*

Sperry cites "doc. 1 @ 24" (*i.e.*, ROA at 34) to support his assertion that his complaint included a request for $1 million in punitive damages. (Opening Br. at 4). However, that page is almost entirely blank. (ROA at 34). In its July 13, 2021, Order, the district court recognized the deficiency of this page of Sperry's complaint, holding that it "was not properly filed[.]" (ROA at 310). The court further found that Sperry failed to amend or correct the page before the district court issued its August 26, 2020, Memorandum and Order dismissing his state law claims for lack of jurisdiction. (ROA at 224, 310).

Moreover, Sperry has no basis for his contention that his complaint must have included the punitive damages amount, otherwise the screening court would have stricken the claims during the initial screening process. (Opening Br. at 4). The fact is, nothing on "the face of the complaint" mentions punitive damages. (ROA at 32-34). Sperry merely requests compensatory damages in "the total amount of interest embezzled from every inmates' trust account[.]" (ROA at 33). But he never specifies how much the "total amount" comes to. (ROA at 223). This does not satisfy the amount-in-controversy requirement.

In addition, Sperry wrongly asserts that punitive damages "*must be* included in the amount-in-controversy calculation." (Emphasis added) (Opening Br. at 4). The cases he cites do not support this conclusion. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (holding that, "[a]s a general matter, '[p]unitive damages *may* be considered in determining the requisite jurisdictional amount'" (emphasis added)); *Woodman of the World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Punitive damages *may* be considered in the requisite jurisdictional amount." (Emphasis added)).

17

**B.    *Sperry cannot recover damages suffered by other inmates.***

Sperry's amount-in-controversy cannot include the interest amount allegedly taken from other inmates. *See Eyman v. Repicky*, No. 1:11 CV 1830, 2011 WL 5878398, at *6 (N.D. Ohio 2011) (holding that in a non-class action suit, the plaintiff "cannot seek recovery on behalf of others"); *Silva v. Tegrity Personnel Services, Inc.*, 986 F. Supp. 2d 826, 836 (S.D. Texas 2013) (holding that plaintiff "cannot seek—and is not entitled to—damages on behalf of others, even those similarly situated, who have not yet formally elected to join the suit").

Sperry cites no authority to support his belief that he is entitled to "the repayment of the interest that should have been paid over to the rest of the inmate population." (Opening Br. at 4). His reliance on *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006), is misplaced because *Lovell* was a class action suit where the jurisdictional question turned on aggregation of claims. And it is not clear how Sperry supports his claim by relying on the factual recitation section of *SFF-TIR, LLC v. Stephenson*, 262 F. Supp. 3d 1165, 1198 (N.D. Okla. 2017), where the panel merely discusses the plaintiff's contention that rescissionary damages are equitable damages.

18

In addition, Sperry provides no support from the record for his self-serving and conclusory claims as to what Defendants "were going to release," and that Defendants' accounting records were "fabricated." (Opening Br. at 4). *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding "allegations [that are] merely conclusory in nature and without supporting factual averments" to be "insufficient to support claim").

Sperry also has not attempted to refute the district court's finding that his complaint fails to mention how much interest was taken from his account. (ROA at 223). Based on the above, this Court should affirm the district court's finding that Sperry failed to meet his burden to show the district court had jurisdiction over his state law claims. (ROA at 224).

## IV. The district court correctly denied Sperry's motion to strike.

Sperry claims the district court erroneously denied his motion to strike Defendants' November 13, 2020, motion for summary judgment based on the supposition that Federal Rule of Civil Procedure 12(g)(2) "prohibits a party from filing a second motion for relief seeking the same relief that was, or could have been, presented in the first motion."

(Opening Br. at 5). Sperry misunderstands the law regarding successive motions for summary judgment, and thus, his argument fails.

### *Standard of Review*

This Court reviews the denial of a motion to strike for abuse of discretion. *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1129 (10th Cir. 2011). "A district court abuses its discretion if its ruling is arbitrary, capricious, or whimsical, or arises from an error of law or a clear error of fact." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1194 (10th Cir. 2021).

### A. *Federal law allows successive summary judgment motions.*

Nothing in the federal rules prohibits a party from filing a second summary judgment motion seeking the same relief that was, or could have been, presented in an initial summary judgment motion, as Sperry claims. (Opening Br. at 5).

A district court has significant discretion to entertain successive summary judgment motions in order to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. *See, e.g., Hoffman v. Tonnemacher*, 593 F.3d 908, 910-12 (9th Cir. 2010) ("assum[ing] the propriety of successive motions for summary

judgment" generally); *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n. 6 (6th Cir. 2006) (holding that "parties are not limited to one summary judgment motion because '[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment"); *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) (holding that "the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist").

Further, Fed. R. Civ. P. 56 does not limit the number of summary judgment motions that may be filed. Indeed, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). It does not say the party is limited to just one motion during that time period. The district court did not abuse its discretion in allowing Defendants' second summary judgment motion.

### B.    *Sperry misunderstands the federal rules for motions to strike.*

In addition, it would have been inappropriate for the district court to strike Defendants' second motion for summary judgment. Under Fed. R. Civ. P. 12(f), "[t]he court may strike *from a pleading* an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter." (Emphasis added). Defendants' motion for summary judgment is not a pleading. *See* Fed. R. Civ. P. 7(a); *Searcy v. Social Sec. Admin.*, 956 F.2d 278, 1992 WL 43490, at *2 (10th Cir. 1992). Therefore, it is not subject to a motion to strike under Rule 12(f). In fact, "there is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda[.]" *Searcy*, 1992 WL 43490 at *2.

Motions to strike under Rule 12(f) are burdensome to courts, disfavored, and rarely granted. *Pilkin v. Sony Interactive Entertainment LLC*, No. 20-7115, 2021 WL 2451299, at *1 (D.C. Cir. 2021); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Sperry faced a high bar of showing that the material in Defendants' summary judgment motion has no possible relation to the controversy and may prejudice him. *See, e.g., Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *Falley v. Friends University*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011). He did not meet this burden.

Here, the district court, in its July 13, 2021, Order, correctly held that Rule 12(g)(2) does not prohibit a second motion for the same relief. (ROA at 303). The court found this particularly true when, as here, the

district court did not previously rule on certain issues. (ROA at 304). In the court's August 26, 2020, Memorandum and Order, it specifically said that, having granted Defendants' qualified immunity argument, there was no reason "to consider Defendants' other arguments in support of dismissing Sperry's federal claims[.]" (ROA at 220, n. 42). These "other arguments" were the subject of Defendants' summary judgment motion here. (ROA at 240, n. 1). Hence, the court recognized that Defendants' motion "raises arguments for which Defendants have not received a ruling on the merits even if previously raised." (ROA at 304).

There was no attempt by Defendants to engage in piecemeal litigation by filing a second summary judgment motion. *See Crawford v. Tilley*, 15 F.4th 752, 764 n. 3 (6th Cir. 2021) ("courts do not approve in general the piecemeal consideration of successive motions for summary judgment[.]" (internal quotations omitted)). Rather, Defendants filed their second motion for the express purpose of challenging both "the outstanding claim against defendants in their official capacities" and the unaddressed additional claims "out of an abundance of caution." (ROA at 240). This Court should affirm.

**V.    The district court properly found that Sperry's official capacity claims for injunctive relief also fail.**

Sperry claims the district court erred by granting Defendants' second motion for summary judgment on his claim for injunctive relief. (Opening Br. at 6). Specifically, he says the court "improperly allowed Defendants to file a second motion for summary judgment challenging not only the claim for injunctive relief, but … all of Plaintiff's legal claims." (Opening Br. at 6). Sperry addresses them all under his Issue V.

*a. Eleventh Amendment Immunity*

Defendants have already addressed Sperry's arguments here under Issue I above.

*b. Statute of Limitations*

Sperry acknowledges that the district court did not address this issue in its July 13, 2021, Order. So there is nothing for this Court to consider on appeal. *See Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), for the general rule that "a federal appellate court does not consider an issue not passed upon below"). Sperry's allegation that Defendants argued this issue "for the sole purpose of harassing pro se prisoner litigants" lacks a factual basis, and he provides none.

24

*c.  Exhaustion of Legal Theories*

Sperry argues that in granting summary judgment to Defendants on this issue, the district court erroneously faulted him for not exhausting administrative remedies on his equal protection, conspiracy, and RICO Act claims. (Opening Br. at 6).

This Court reviews de novo the district court's finding of failure to exhaust administrative remedies. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must comply with the prison's grievance procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Substantial compliance" with the prison's grievance process is insufficient. *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007); *see Jernigan*, 304 F.3d at 1032 (holding the doctrine of substantial compliance inapplicable to grievance procedure).

"While a prisoner need not allege any particular legal theory, his grievance must be particular enough as to 'provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.'" *Toevs v. Milyard*, 563 Fed. Appx. 640, 644 (10th Cir. 2014) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Thus, the prisoner's grievance must alert prison officials to the basis on which he will challenge the action taken against him. *Id.*

The KDOC's four-step inmate grievance procedure is outlined in K.A.R. § 44-15-102. Briefly summarized, inmates must first attempt an informal resolution with their unit team members, which must be documented on an inmate request form, also known as a "Form 9." If this informal resolution fails, an inmate may submit a grievance to the unit team, accompanied by documentation of the attempt at informal resolution. If the inmate believes the unit team response is inadequate, he may submit the grievance to the Warden, and ultimately may appeal to the Secretary of Corrections. K.A.R. § 44-15-102(a)-(c).

These mandatory remedies apply to each of Sperry's claims. *Jones v. Bock*, 549 U.S. 199, 220 (2007). Where an inmate exhausts his administrative remedies as to some, but not all, of his claims brought

under § 1983, the court should dismiss the unexhausted claims and proceed only on the exhausted ones. *Id*. at 220-21.

Here, Sperry filed a grievance with his Unit Team Manager on October 15, 2015, alleging KDOC's failure to pay interest to all inmates on their accounts and its charge of a monthly administrative fee. (ROA at 47). On October 26, 2015, Sperry filed a follow-up grievance reiterating his claims regarding interest not being paid and the administration fee being charged. (ROA at 48). On November 4, 2015, Sperry indicated he was not satisfied with the Unit Team response and wished to forward his grievance to the Warden's office. (ROA at 48). Warden Pryor responded to Sperry's grievance, finding that "the response provided by Unit Team Manager Wildermuth is appropriate regarding your issues." (ROA at 49). On November 12, 2015, Sperry filed an appeal with the Secretary of Corrections, claiming "KDOC owes me, and every other inmate, several years of interest on our money. KDOC must immediately pay over all this delinquent interest and fire everyone involved in the criminal embezzlement of our money[ ]" and "refund all $1 fees for several years." (ROA at 190).

Sperry believes that what he alleged in these grievances "was more than sufficient to put [Defendants] on notice" of their due process, conspiracy, and RICO violations. (Opening Br. at 7). In other words, despite the fact his grievances never hint at due process, conspiracy, or RICO concerns, somehow prison officials were required to divine these concerns simply from his claim that interest was unlawfully withheld, should be repaid, and the perpetrators fired. The district court considered, and rejected, this faulty reasoning, holding that Sperry never explains how the allegations in his grievances would have notified prison officials to the full range of his concerns or show a triable fact on this issue. (ROA at 316). Sperry's failure to grieve his due process, conspiracy, and racketeering concerns deprived Defendants of a fair opportunity to consider and resolve his claims, which is the very purpose of the PLRA exhaustion requirements. *Woodford*, 548 U.S. at 89.

Although an inmate does not have to advance any particular legal theory to exhaust his administrative remedies, *see Toevs*, 563 Fed. Appx. at 644—a point which both Sperry and the district court affirm, (Opening Br. at 6-7; ROA at 316)—he must submit a grievance that is sufficiently particular to give administrators a fair opportunity under the

28

circumstances to address the problem. *Toevs*, 563 Fed. Appx. at 644. Sperry did not do so. This Court should affirm.

### d. Failure to State a Constitutional Claim

This Court reviews de novo the district court's grant of summary judgment on Sperry's federal claims for injunctive relief. *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1227 (10th Cir. 2021).

Sperry states that his complaint "clearly argued" that Defendants "violated his Due Process, Equal Protection, and Takings Clause rights." (Opening Br. at 7). Yet on appeal, he does not make any due process or equal protection argument, and thus, he has waived those issues. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("[I]ssues will be deemed waived if they are not adequately briefed" (internal quotations omitted)). The sole issue here is whether Sperry suffered a Takings Clause violation.

Further, Sperry claims that Defendants have "fabricated documents" and provided "fake records." (Opening Br. at 7-8). Notwithstanding the fact that Sperry has no factual basis for this allegation, he depends on these so-called "fake records" for his argument that interest was unlawfully withheld from the inmate trust account

from 2012 to 2017. (ROA at 51-146 (Exhibit D to the *Martinez* Report), 165, 191; Opening Br. at 2). Sperry cannot have it both ways, decrying the documents as "fabricated," while relying on them to support his argument that interest was unlawfully withheld.

Next, Sperry argues that under Kan. Stat. Ann. § 76-173, "the warden and his designee [must] be responsible for each inmate's money and that their money be invested in interest bearing accounts at a federally insured bank, savings and loan, or credit union." (Opening Br. at 7). This misstates the statute, which does not make the warden responsible for inmate money in the trust fund. Rather, it is the warden's designee alone who is "in charge of the trust funds to which this act applies." Kan. Stat. Ann. § 76-173. Moreover, as explained under Issue I.B. above, Melissa Brooke is the KDOC's designee for managing trust fund accounts, and she is not a party to Sperry's suit. (ROA at 266).

Sperry correctly notes that under Kan. Stat. Ann. § 76-175(a), the designee may invest trust fund moneys in certificates of deposit or shares in a credit union. (Opening Br. at 7). However, he goes on to argue that investments are only allowed in these instruments "because there are no 'bank fees' for these investments that could erode the investment

30

capital." (Opening Br. at 7). Sperry claims "[t]here are no bank fees charged to the inmate trust account[.]" However, he has no factual basis for this claim. The only support he offers is his affidavit stating that in his years of investing in certificates of deposit, he has never been charged bank fees. (ROA at 291). But his own investing experience does not constitute personal knowledge of any universal rules pertaining to bank fees. *See Hall*, 935 F.3d at 1111 ("nonmovant's affidavits must be based upon personal knowledge"). Moreover, he has provided nothing to refute the fact that UMB Bank and US Bank Trust impose service charges on KDOC on the inmate trust account. (ROA at 51-146). Hence, the district court rightly deemed Defendants' facts as admitted for purposes of summary judgment. (ROA at 311).

Sperry continues his erroneous reading of Kan. Stat. Ann. § 76-171, *et seq*. in isolation. (Opening Br. at 8; ROA at 250). He offers nothing to dispute that inmate trust funds under Kan. Stat. Ann. § 76-175 are trusts subject to the Kansas Uniform Trust Code ("KUTC"). *See* Kan. Stat. Ann. § 58a-101, *et seq*.; *Matson v. Kansas Dept. of Corr*., 346 P.3d 327, 330 (Kan. 2015) (holding that "the inmate trust fund is, in fact, a trust subject to the KUTC"). Since the inmate trust fund is under the KUTC, the

KDOC trustee is entitled to be reimbursed out of the trust property for expenses incurred in administering the trust. Kan. Stat. Ann. § 58a-709(a)(1). As explained in the comments to the Uniform Trust Code, "[t]he trustee may also withhold appropriate reimbursement for expenses before making distribution to the beneficiaries." Comment to Unif. Trust Code § 709 (citing Restatement (Third) of Trusts § 38 cmt. B (2003)). Further, the KDOC's procedure of disbursing interest for the inmate trust fund accounts has been approved by the Kansas Department of Administration's director of accounts and reports in accordance with Kan. Stat. Ann. § 76-175(b). (ROA at 272).

KDOC's policy of deducting fees incurred in administering the inmate trust fund accounts before distributing interest earned to the inmates is consistent with the provisions of Kan. Stat. Ann. § 76-175 and the KUTC. Sperry is not entitled to enjoy free banking services and earn interest upon the trust funds while the account is operating at a net loss. The district court properly found that Sperry was owed no compensation under the Takings Clause. (ROA at 319).

Sperry contends that "[t]he District Court's two rulings are absurd." (Opening Br. at 8). On the first ruling, he states that he "has more than

32

met the burden of proving that government officials took his interest." (Opening Br. at 8). But this misses the point of the district court's holding. The question the district court addressed was not whether the interest was taken, but whether it "was taken *for a public use.*" (Emphasis added). (ROA at 318). It correctly found it was not. (ROA at 318).

The facts here show that the interest earned on his account was never used for any purpose other than to pay the bank fees associated with maintaining the trust account. (ROA at 267). The Fifth and Ninth Circuits have found that this policy does not constitute a taking as a matter of law. *See Hatfield v. Scott*, 306 F.3d 223, 229 (5th Cir. 2002) (prison policy of using earned interest on inmate trust fund account to pay for the cost of administering the fund, including bank fees, not a taking); *Vance v. Barrett*, 345 F.3d 1083, 1089-90 (9th Cir. 2003) (prison policy of deducting expenses incurred in maintaining inmate trust accounts not a taking). Indeed, the Supreme Court explained in *Phillips v. Washington Legal Foundation*, a state is not prohibited "from imposing reasonable fees it incurs in generating and allocating interest income." 524 U.S. at 171. Sperry does not show that his private property was taken

for a public use. *See* U.S. CONST. amend. V. This Court should reject his claim.

On the second ruling, Sperry alleges that the district court "twisted the facts" by "drop[ping] the defendants' argument that the bank took the interest as 'bank fees'" and converting it into an argument that "defendants incurred unspecified expenses in administering the trust fund[.]" (Opening Br. at 8). Contrary to Sperry's assertion, the district court held that "on the instant record, it is uncontroverted that interest was not paid on inmate trust accounts from 2012 to 2017 because *the fees* incurred for the monthly maintenance of the Inmate Trust Fund exceeded interest accrued due to the continuing economic downturn and falling interest rates." (Emphasis added) (ROA at 319).

In addition, Sperry offers no evidence that bank fees cannot be synonymous with, or included as part of, "service charges" or the "costs of administering the inmate accounts." (ROA at 51-146, 319). He also does not challenge the district court's reliance on *McIntyre v. Bayer*, 339 F.3d 1097, 1100 (9th Cir. 2003) (relying on *Brown v. Legal Found. Of Wash.*, 538 U.S. 216 (2003), for the holding that "'[j]ust compensation … is measured by the *net value* of the interest that was *actually earned*' by

the owner of the principle"), and *Irive v. Masto*, No. 3:11-cv-00574-ECR-VPC, 2011 WL 6735880, at *2 (D. Nev. 2011) (relying on *McIntyre*, 339 F.3d at 1100-02, for the holding that "[n]o compensation is owed under the Takings Clause as to … the amount [of interest] that does not exceed administrative costs—*even if that amount is allocated to a public purpose, such as the offender's store fund*")

The district court properly found that Sperry failed to carry his substantial burden of establishing that, even if there was a taking, he was denied just compensation. (ROA at 319). This Court should affirm.

## CONCLUSION

For the foregoing reasons, Defendants respectfully asks this Court to affirm both the district court's August 26, 2020, Memorandum and Order and its July 13, 2021, Order granting summary judgment in favor of Defendants.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Michael J. Duenes*
Michael J. Duenes (KS No. 26431)
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,783 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface—14-point Century Schoolbook—using Microsoft Word.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF DEFENDANTS-APPELLEES, as submitted in digital form via the court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2022, the foregoing BRIEF OF DEFENDANTS-APPELLEES was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that I caused seven paper copies to be delivered by Federal Express to the Clerk's Office within five business days of this filing. I further certify that I cause one paper copy to be deposited in the United States Mail, first-class postage prepaid to:

Mr. Jeffery J. Sperry, #47031
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043
*Appellant Pro Se*


DATED: February 10, 2022        /s/ *Michael J. Duenes*
                                 Michael J. Duenes
                                 Assistant Attorney General

# ATTACHMENTS

## 10th Cir. R. 28.2(B) ATTACHMENTS

Addendum A          District Court Memorandum and Order (Doc. 37)

Addendum B          District Court Order (Doc. 62)

Addendum C          Judgment (Doc. 63)

## Fed. R. App. P. Rule 28(f) ATTACHMENTS

Addendum D          Fed. R. Civ. P. 1

Addendum E          Fed. R. Civ. P. 12

Addendum F          Fed. R. Civ. P. 7

Addendum G          Fed. R. Civ. P. 56

Addendum H          Kan. Stat. Ann. § 76-173

Addendum I          Kan. Stat. Ann. § 76-175

Addendum J          Kan. Stat. Ann. § 58a-709

Addendum K          42 U.S.C. § 1997e

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

       *Plaintiff,*

vs.

       Case No. 18-3120-EFM-GEB

RAYMOND ROBERTS et al.,

       *Defendants.*

## MEMORANDUM AND ORDER

Pro se Plaintiff Jeffrey Sperry sued Defendants Raymond Roberts, Johnnie Goddard, Rex Pryor, James Heimgartner, and Lindsey Wildermuth for failing to pay him the interest earned on his inmate trust account.  Sperry alleges that Defendants' actions violated a number of federal and state laws.  As a remedy, Sperry seeks monetary damages, a declaratory judgment, and injunctive relief.  Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 24).  For the following reasons, Defendants' Motion is granted in part and denied in part.

### I.       Factual and Procedural Background[1]

Sperry has been an inmate in the custody of the Kansas Department of Corrections ("KDOC") since April 1997, and he is currently held at the El Dorado Correctional Facility.  In November 2016, Sperry filed a lawsuit against 24 KDOC defendants, alleging a variety of claims

---

[1] The facts are taken from Sperry's Complaint and are accepted as true for the purposes of this ruling.

relating to his treatment in prison.  That case was docketed as 16-cv-03222.  A year later, Sperry filed an amended complaint which included 14 counts against the same 24 defendants.  In both his original and amended complaint, Sperry alleged that Roberts, Goddard, Pryor, Heimgartner, and Wildermuth unlawfully failed to pay Sperry interest earned on his inmate trust account.

This Court severed four of Sperry's counts into new, separate lawsuits.[2]  This case is one of those severed lawsuits, and it addresses only Count IX of Sperry's Amended Complaint from his original lawsuit.  In Count IX, Sperry alleges that from 1997 to February 2012, his inmate account accumulated interest continuously.  However, Sperry alleges that in February 2012 Defendants began taking the interest that should have gone into his trust fund account.  Sperry alleges that Defendants' actions violated a number of his federal constitutional and statutory rights, including the Fifth and Fourteenth Amendment,  the RICO Act, and 42 U.S.C. § 1985 (conspiracy to violate civil rights).  Sperry also alleges Defendants committed the torts of conversion, outrageous conduct, breach of fiduciary duty, and negligence under Kansas law.  As a remedy, Sperry requests the Court order Defendants to "immediately start paying plaintiff his proper interest on his inmate trust accounts."[3]  Sperry also requests monetary damages in "the total amount of interest embezzled from every inmates' [sic] trust account . . . ."[4]

This Court ordered that a *Martinez* report be prepared to address Sperry's allegations, and the report was filed in March 2019.  According to the *Martinez* report, during the relevant period— 2012 through 2017—the amount of fees charged on the inmate trust funds exceeded the interest

---

[2] Doc. 11.

[3] Doc. 1, at 22.

[4] Doc. 1, at 23.

earned from those accounts.  So, Sperry did not receive any interest during that time.  But in June 2017, the interest earned from Sperry's account once again exceeded the account's fees, and interest started to accrue in Sperry's trust fund accordingly.  Sperry does not dispute that he has received interest on his inmate trust fund since June 2017.  Furthermore, Sperry does not dispute the *Martinez* report's explanation that he received no interest because that money was used to pay his account's bank fees.  Sperry does argue that it was unlawful for KDOC to use interest earned from inmate trust accounts to pay for bank fees.

On July 24, 2019, Defendants filed a Rule 12(b) motion to dismiss or, in the alternative, a Rule 56 motion for summary judgment on Sperry's claims.  Defendants argue that Sperry's claims should be dismissed for a variety of different reasons.  The Court granted Sperry two extensions to file a Response, giving him a deadline of October 21, 2019.  Sperry did not file his Response until January 10, 2020.  Sperry did not explain the reason for the delay.  Defendants filed a timely Reply, and this motion is ripe of the Court's consideration.

## II.    Legal Standard[5]

Under Rule 12(b)(1), the Court may dismiss a complaint based on a lack of subject matter jurisdiction.  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory or

---

[5] The Court rules on Defendants' Motion under Rule 12(b).  Although the Court could convert the Motion to one for summary judgment under Rule 56, such a step is not necessary, even though the Court takes some facts  from the *Martinez* report into consideration. *See Stewart v. Norwood*, 2017 WL 4284971, at *2 n.25 (D. Kan. 2017) (stating that a *Martinez* report may be considered in a Rule 12(b) motion—rather than converting it to a motion for summary judgment—when the Court "considers only those factual recitations set forth in the *Martinez* report that are corroborated or undisputed by [the p]laintiff").

constitutional basis to exercise jurisdiction."[6]  "The law imposes a presumption against jurisdiction, and plaintiff bears the burden of showing that jurisdiction is proper."[7]

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[8]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[9]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[12]

---

[6] *Solis v. La Familia Corp.*, 2011 WL 2531140, at *2 (D. Kan. 2011) (citing *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007)).

[7] *Id.*

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[13]  A pro se litigant is entitled to a liberal construction of his pleadings.[14]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[15]  But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[16]  As it relates to motions to dismiss generally, "the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff."[17]  "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

### III.   Analysis

### A.   Local Rules 6.1 and 7.4.

Defendants ask the Court to strike Sperry's Response for failing to comply with D. Kan. Rules 6.1(d) and 7.4(b) and consider their Motion as uncontested.  Rule 6.1(d) gives parties 21 days to file a response to a dispositive motion.[19]  Rule 7.4 states:

---

[13] *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[14] *See Trackwell v. U.S. Gov't,* 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[15] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*

[17] *Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1240 (10th Cir. 2000).

[18] *Iqbal,* 556 U.S. at 678.

[19] D. Kan. Rule 6.1(d)(2).

Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.[20]

Here, Defendants filed their Motion on July 24, 2019. Sperry requested and was granted two extensions to file his Response. Sperry was required to file his Response by October 21, 2019, but he did not file his Response until January 10, 2020. Sperry gives no explanation for the tardiness of his Response. Based on Sperry's failure to file a timely Response, Rule 7.4(b) authorizes the Court to grant Defendants' Motion "without further discussion."[21] However, such a ruling may not be consistent with Tenth Circuit law.[22] Additionally, the Court "has considerable latitude in interpreting and applying its local rules."[23] "When possible and reasonable, the [C]ourt prefers to resolve motions on their merits after all sides have stated their positions. While the [C]ourt is certainly not required to give parties additional opportunities to file briefs, it is within this [C]ourt's discretion to do so."[24] Accordingly, the Court will exercise its discretion and analyze Defendants' Motion on its merits despite Sperry's failure to abide by the local rules.

---

[20] D. Kan. Rule 7.4(b).

[21] *Bigler v. U.S. Bank Tr.*, 2017 WL 2362087, at *1 (D. Kan. 2017)

[22] *See Ellison v. English*, 2019 WL 3716448, at *1 (D. Kan. 2019) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003) ("[T]he Tenth Circuit has directed that a district court may not grant a motion to dismiss or a motion for summary judgment based solely on the plaintiff's failure to respond.").

[23] *Johnston v. Prairie View*, 2019 WL 4751998, at *2 (D. Kan. 2019).

[24] *Id.*

### B.   Eleventh Amendment Immunity

Sperry seeks monetary damages and a declaratory judgment against all five Defendants in their official capacities.  Defendants, in turn, assert that they are entitled to Eleventh Amendment immunity.   Generally, "[t]he Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens."[25]   Sovereign  immunity under the Eleventh Amendment, if effectively asserted, strips the Court of subject matter jurisdiction.[26]  This immunity also "extends to arms of the state and to state officials who are sued for damages in their official capacity."[27]   Eleventh Amendment immunity is not absolute: states may waive this immunity and consent to suit in federal court, and Congress may abrogate it.[28]

Here, Defendants are state officials entitled to Eleventh Amendment immunity in their official capacities.  Sperry has not demonstrated that Congress abrogated Eleventh Amendment immunity or that Kansas consented to being sued for these claims.  As a result, Sperry's claims for monetary damages against Defendants in their official capacities are dismissed.

### C.   Qualified Immunity

Sperry also seeks monetary damages against Defendants in their individual capacities. Defendants argue that they are entitled to qualified immunity, which  "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."[29]  "The qualified-immunity doctrine protects public employees from both liability and 'from the burdens

---

[25] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).

[26] *Id.*

[27] *Id.*

[28] *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019).

[29] *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016) (citation and quotations omitted).

of litigation' arising from their exercise of discretion."[30]   Once state officials claim qualified immunity, the burden is on the plaintiff to show that (1) the defendant's actions violated a federal constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's alleged conduct.[31]   Although the plaintiff must prove both elements for the suit to proceed, courts have discretion to choose which part of the test to address first.[32]

The Court elects to analyze the second prong of the qualified immunity test first. Ordinarily, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[33]   Sperry cites no caselaw showing that Defendants violated a clearly established right.   Instead, Sperry argues that he need only cite K.S.A. § 76-175(b), which he claims gives him a property interest in the interest earned on his inmate account.[34] A similar issue was raised in this district in *Stewart v. Norwood*.[35]

In *Stewart*, the plaintiff was an inmate who claimed, among other things, that Kansas prison officials failed to pay him interest earned on his inmate account.   Prior to his incarceration, the plaintiff served in the military.   During his time in prison, the plaintiff received benefits from the

---

[30] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)).

[31] *Id.*

[32] *Id.*

[33] *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018)

[34] K.S.A. § 76-175(b) states: "Interest earned on moneys invested under this section shall be regularly prorated according to procedures approved by the director of accounts and reports and credited to the individual patient, inmate or other account on the basis of the amount of money each patient, inmate or other person has in the trust fund."

[35] *Stewart v. Norwood*, 2017 WL 4284971 (D. Kan. 2017).

Veterans Administration for his service, which were deposited into his inmate account. Because of the payments from the VA, the plaintiff's inmate account contained more money than the average inmate's account. Despite the plaintiff's account containing more money (and thereby earning more interest) compared to other inmates' accounts, the plaintiff asserted that the prison used his earned interest to pay bank fees for the larger prison population.[36] The plaintiff argued that this violated the Takings Clause of the Fifth Amendment.

In *Stewart*, the defendants raised a qualified immunity defense. The court analyzed both prongs of the qualified immunity test. Based largely on K.S.A. § 76-175(b), the court concluded that the plaintiff had "a protectable property interest in the interest generated from his inmate trust account,"[37] and therefore the prison taking interest earned on the plaintiff's account to pay banks fees on other inmate's accounts implicated the Fifth Amendment's Takings Clause. Accordingly, the court held that the plaintiff satisfied the first prong of the qualified immunity test.[38]

However, given the lack of Tenth Circuit caselaw on point (as well as a split among the circuits that considered similar issues), the court held that the plaintiff's "property interest in interest generated by his inmate trust account *was not clearly established at the time of the challenged conduct*."[39] Thus, the court concluded that the defendants were entitled to qualified immunity.[40]

---

[36] *Id.* at *10–12.

[37] *Id.* at *11.

[38] *Id.* at *12.

[39] *Id.* at *13 (emphasis added).

[40] *Id.*

Here, the Court reaches a similar conclusion.  Notably, in *Stewart*, the court held that it was not a violation of clearly established law for the defendants to use one inmate's earned interest to pay bank fees for *other* inmates' accounts.  Here, the Court addresses a much narrower question: was it clearly established at the time of Defendants' alleged misconduct (February 2012 to June 2017) that it was unlawful to use interest earned from Sperry's inmate account to pay bank fees associated with his own account.  *Stewart* is the first case in this district to address this matter, and it was decided in September 2017—months after the Defendants' alleged misconduct in this case. So, the opinion has no bearing on whether it was clearly established that Defendants actions violated Sperry's constitutional rights.

Furthermore, for a right to be clearly established, Sperry must either "identify[] an on-point Supreme Court or published Tenth Circuit decision" or, alternatively, show that "the clearly established weight of authority from other courts [] have found the law to be as the [he] maintains."[41]  Even if *Stewart* had been decided earlier, a single non-binding district court opinion does not clearly establish a right under the qualified immunity doctrine.  Sperry fails to demonstrate that Defendants violated a clearly established law, and Defendants are therefore entitled to qualified immunity in their individual-capacities on Sperry's federal claims.[42]  Qualified immunity, however, does not extend to Sperry's claims arising under state law.[43]

---

[41] *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).

[42] This ruling renders it unnecessary for the Court to consider Defendants' other arguments in support of dismissing Sperry's federal claims, including failure to state a claim, failure to exhaust administrative remedies on every claim but the Takings Clause violation, statute of limitations barring claims from February 2012 to November 2015, and failure to allege Defendants personally participated in violating Sperry's constitutional and statutory rights.

[43] *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1294 (D. Kan. 2009) (citing *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008)) ("[U]nder the governing Tenth Circuit law, qualified immunity does not apply to claims asserted under state law.").

D.    **Mootness**

Sperry also seeks injunctive relief, requesting that the Court order Defendants to "immediately start paying plaintiff his proper interest on his inmate trust accounts."[44]  Defendants argue that the *Martinez* report filed in this case shows that Sperry has received interest on his account uninterrupted since June 2017.[45]  Thus, the claim for injunctive relief is moot.  Sperry does not dispute this fact.  He instead argues that his claim for injunctive relief should not be dismissed as moot because Defendants will likely repeat their unlawful behavior in the future.

It is not entirely clear from Sperry's Response what exception to the mootness doctrine he is relying on.  One well-known exception to the mootness doctrine is for violations that are capable of repetition, yet evading review.[46]  Another is the voluntary cessation exception.[47]  Defendants address only the former.  The Court, however, deems it unnecessary to rule on whether the capable of repetition, yet evading review exception applies here.  Rather, the Court concludes that the voluntary cessation exception supplies sufficient reason to deny Defendants' request to dismiss Sperry's injunctive relief claim as moot.

"Under the 'voluntary cessation exception' to mootness, 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.' "[48]  This exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit

---

[44] Doc. 1, at 22.

[45] Doc. 16, Ex. D, at 76.

[46] *See Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005).

[47] *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016).

[48] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (citations omitted)

moot and then resum[e] the illegal conduct."[49]  Importantly, to avoid application of the voluntary cessation exception, the defendant "carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[50]  "This burden is 'stringent' and 'heavy.' "[51]

Here, Defendants' entire argument is that Sperry has not carried his burden to prove that the capable of repetition, yet evading review exception applies in this case.  But Defendants fail to recognize that they carry the burden under the voluntary cessation exception, and they offer nothing to meet this obligation.  The Court recognizes that the Complaint in this case was filed in November 2017, which is after the alleged deprivation stopped.  However, Sperry originally brought this claim (with many other claims) a year earlier while the alleged violation was still ongoing.[52]  The Court ordered this claim severed into a new lawsuit in November 2017, but that does not change the fact that when Sperry filed his suit for injunctive relief the alleged violations had not ceased.  Because Sperry brought his claim while the violation was allegedly ongoing, the voluntary cessation doctrine is appropriate for the Court's consideration.  Defendants have not met their burden to show that the "wrongful behavior could not reasonably be expected to recur,"[53] and the Court therefore holds that Sperry's request for injunctive relief should not be dismissed as moot.

---

[49] *Id.* at 880-81.

[50] *Id.* (internal citations and quotations omitted).

[51] *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

[52] *See Sperry v. Wildermuth et al*, 5:16-cv-03222-SAC (D. Kan.), Doc. 1.

[53] *Prison Legal News*, 944 F.3d at 880–81.

-12-

E.      **State law claims**

The only remaining claims to address are Sperry's claims under Kansas law against Defendants in their individual capacities.  Sperry brings tort claims for conversion, outrageous conduct, breach of fiduciary duty, and negligence.  Defendants argue that because the Court should dismiss all of Sperry's federal claims, the Court also should decline to exercise supplemental jurisdiction over Sperry's state law claims.  Sperry, in contrast, argues that Defendants' argument is misplaced because the Court has original jurisdiction over his state law claims under the federal diversity jurisdiction statute.

Under 28 U.S.C. § 1332, the Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . ."[54]

Sperry focuses on § 1332's citizenship requirement, arguing that he is a Missouri citizen and each Defendant is a Kansas citizen.  The Court notes that even though Sperry is incarcerated in Kansas, he may still be a Missouri citizen.[55]  However, § 1332 also contains an amount-in-controversy requirement of $75,000, and Sperry does not address this aspect of § 1332.  Sperry seeks monetary damages in "the total amount of interest embezzled from every inmates' trust account . . . ."  Notwithstanding the fact that Sperry is trying to recover damages suffered by other inmates (which he is not entitled to do), Sperry's Complaint makes no mention of how much interest was taken from his account.  The burden is on Sperry to demonstrate that the Court has

---

[54] 28 U.S.C. § 1332(a)(1).

[55] *Smith v. Cummings*, 445 F.3d 1254, 1259–60 (10th Cir. 2006) ("For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile . . . [and b]ecause domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state.").

jurisdiction over his state law claims, and he fails to meet that burden with respect to § 1332's amount-in-controversy requirement. Accordingly, the Court holds that it does not have jurisdiction over Sperry's state law claims pursuant to the diversity jurisdiction statute. Because that is the sole basis on which Sperry argues the Court has jurisdiction over his tort claims, the Court dismisses them.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 24) is **GRANTED IN PART AND DENIED IN PART.** Specifically, the Court lacks jurisdiction over Sperry's official-capacity and state law claims; Defendants are entitled to qualified immunity in their individual capacities on Sperry's federal claims; Sperry may proceed on his claim for injunctive relief.

**IT IS SO ORDERED.**

Dated this 26th day of August, 2020.


*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-14-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JEFFREY J. SPERRY,**

      **Plaintiff,**

      **v.**

**RAYMOND ROBERTS, et al.,**

      **Defendants.**

**Case No. 5:18-cv-03120-HLT-GEB**

### <ins>ORDER</ins>

Pro se Plaintiff Jeffrey Sperry[1] sued Defendants Secretary of Corrections Raymond Roberts, Deputy Secretary of Corrections Johnnie Goddard, Warden Rex Pryor, Warden James Heimgartner, and Unit Team Manager Lindsey Wildermuth for failing to pay him the interest earned on his inmate trust account. Plaintiff alleges that Defendants' actions violated several federal and state laws. Plaintiff seeks monetary damages, a declaratory judgment, and injunctive relief.[2]

On August 26, 2020, District Judge Eric F. Melgren granted in part and denied in part Defendants' motion to dismiss. Doc. 37. The sole remaining claims are Plaintiff's federal claims against Defendants in their official capacities for injunctive relief. The case was reassigned to the undersigned on December 9, 2020. Plaintiff now moves to alter or amend judgment. Doc. 47. And Defendants move for summary judgment on the remaining claims. Doc. 48.[3] For the following reasons, the Court denies Plaintiff's motion and grants Defendants' motion.

---

[1]    The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not take on the role of advocate. *Id.*

[2]    The Court collectively refers to Plaintiff's request for declaratory judgment and injunctive relief as "injunctive relief" to simplify this order.

[3]    Plaintiff also moves to strike Defendants' second motion for summary judgment. Doc. 56. Plaintiff argues that Federal Rule of Civil Procedure 12(g)(2) prohibits the filing of a second motion for the same relief. Doc. 56 at 1.

# I.     BACKGROUND

Plaintiff has been an inmate in the custody of the Kansas Department of Corrections ("KDOC") since April 1997, and he is currently held at the El Dorado Correctional Facility. In November 2016, he filed a lawsuit[4] against 24 KDOC defendants, alleging a variety of claims relating to his treatment in custody. Plaintiff filed an amended complaint a year later, alleging 14 counts against the same 24 defendants. In both his original and amended complaint, Plaintiff alleged that Roberts, Goddard, Pryor, Heimgartner, and Wildermuth unlawfully failed to pay him interest earned on his inmate trust account.

The then-assigned district court judge severed four of Plaintiff's counts into new, separate lawsuits. Doc. 11. This case is one of those severed lawsuits, and it addresses only Count IX of Plaintiff's amended complaint. In Count IX, Plaintiff alleges:

> Count Nine: The actions of defendants Roberts, Goddard, Pryor, Heimgartner, and Wildermuth, in embezzling the interest from the plaintiff's financial accounts constitutes a violation . . . of plaintiff's Fifth Amendment protection under the "takings clause," his Fourteenth Amendment due process and equal protection rights, constitutes embezzlement under the R.I.C.O. Act, is a conspiracy to violate plaintiff's civil rights; and constitutes the torts of conversion, outrageous conduct, breach of fiduciary duty, and negligence, under federal and Kansas law.
>
> Supporting facts: Kansas law mandates that the warden of each facility keep every inmate's money in an interest bearing, federal insured, bank account and that the interest accrued be added to the inmate's account. K.S.A. 75-5257. From 1997 up to February 2012,

---

The Court disagrees. Rule 12(g)(2) prohibits serial Rule 12 motions raising objections that were available to Defendants but omitted from an earlier Rule 12 motion. Rule 12(g)(2) does not prohibit a second or successive Rule 56 motion for summary judgment particularly when a district court did not previously rule on an issue. Moreover, Plaintiff does not substantively respond to Defendants' argument that Rule 12(f) only authorizes the Court to strike pleadings and that their motion and memorandum in support are not "pleadings." See Fed. R. Civ. P. 7(a) (listing documents considered pleadings). The Court finds that Defendants' motion for summary judgment was properly filed before the dispositive motion deadline and raises arguments for which Defendants have not received a ruling on the merits even if previously raised. *See* Doc. 43. Accordingly, the Court denies Plaintiff's motion to strike.

4      That case was docketed as 16-cv-03222.

> plaintiff received the interest accrued added to his account every month. Starting in February 2012, the defendants started embezzling the interest accrued on plaintiff's account and quit adding it to his account. Plaintiff owns the money in his inmate account, and he owns the interest accrued from that account. He has never authorized anyone to take the interest accrued on his account and the defendants' actions in embezzling these funds is clearly theft.

Doc. 1 at 15. Plaintiff requests monetary damages in the total amount of interest embezzled from every inmate's trust account, declaratory judgment stating that Defendants violated Plaintiff's rights, and an order requiring Defendants to immediately start paying him his proper interest on his inmate trust account. *Id*. at 22-23.

On July 24, 2019, Defendants filed a Rule 12(b) motion to dismiss or, in the alternative, a Rule 56 motion for summary judgment. Judge Melgren granted in part and denied in part the motion. First, Judge Melgren dismissed Plaintiff's federal and state claims for monetary damages against Defendants in their official capacities based on Eleventh Amendment immunity. Second, Judge Melgren found that qualified immunity shielded Defendants in their individual capacities from Plaintiff's federal claims for monetary damages because Plaintiff did not demonstrate that they violated his clearly established statutory or constitutional rights. Third, Judge Melgren declined to dismiss Plaintiff's federal claims for injunctive relief. Fourth, and finally, Judge Melgren found that Plaintiff failed to show subject-matter jurisdiction for his remaining state law claims under 28 U.S.C. § 1332.

Plaintiff now moves to alter or amend judgment. Doc. 47. Defendants move for summary judgment on Plaintiff's remaining federal claims. Doc. 48.

## II.   STANDARDS

Plaintiff moves to alter or amend Judge Melgren's order. Because that order did not dispose of all Plaintiff's claims, it was not a final judgment. Thus, Plaintiff's motion to alter or amend

judgment is an interlocutory motion invoking the Court's discretionary authority to review and revise interlocutory rulings before entry of final judgment. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008). The Court may treat the motion as a motion for reconsideration based on the Court's inherent power to review its interlocutory orders. In doing so, the Court will apply the legal standards applicable to a Rule 59(e) motion to alter or amend and/or a motion to reconsider a non-dispositive order under Local Rule 7.3, which are essentially identical. *Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010). Relief under Rule 59(e) is available only if a party can establish: (1) there is an intervening change in controlling law; (2) there is new evidence that was previously unavailable; or (3) there is a need to correct clear error or prevent manifest injustice. *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017).

Defendants move for summary judgment. Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation omitted).

## III.   ANALYSIS

Plaintiff originally alleged federal and state claims seeking both monetary and injunctive relief against Defendants in the official and individual capacities. Judge Melgren's order removed

most of Plaintiff's claims but left the federal claims for injunctive relief that are asserted against Defendants in their official capacities. Plaintiff's instant motion challenges each adverse ruling in Judge Melgren's order. Conversely, Defendants seek summary judgment in their favor on the remaining claims. Because these motions collective challenge (in some manner) each originally asserted claim, the Court addresses the motions together.

    **A.**    **Claims addressed in Judge Melgren's Order.**

        **1.**    **Plaintiff's federal and state-law claims for monetary damages against Defendants in their official capacities.**

Judge Melgren dismissed Plaintiff's federal and state-law claims for monetary damages against Defendants in their official capacities because Plaintiff did not demonstrate that Congress abrogated Eleventh Amendment immunity or that Kansas consented to being sued for these claims. Doc. 37 at 7. Plaintiff seeks reconsideration and argues that state officials are not entitled to Eleventh Amendment immunity in their official capacity for injunctive relief. Plaintiff cites *Kentucky v. Graham*, 473 U.S. 159, 167 (1985), and asserts that his claims for injunctive relief must be reinstated.

Plaintiff misconstrues Judge Melgren's order because that order only dismissed Plaintiff's federal and state-law claims for <u>monetary damages</u> against Defendants in their official capacities based on Eleventh Amendment immunity. Judge Melgren did not dismiss Plaintiff's federal and state-law claims for <u>injunctive relief</u> based on Eleventh Amendment immunity. Thus, the Court denies Plaintiff's motion to the extent it challenges the dismissal of Plaintiff's federal and state-law claims for monetary damages against Defendants in their official capacities because he has not explained how this ruling justifies reconsideration.[5]

---

[5]    In case the Court has misconstrued Plaintiff's argument, the Court agrees with Judge Melgren's order. In response to Defendant's original motion to dismiss, Plaintiff only argued that Defendants may be sued for injunctive relief. *See* Doc. 34 at 2-3. He did not substantively respond to Defendants' argument that Eleventh Amendment

2.      **Plaintiff's federal claims for monetary damages against Defendants in their individual capacities.**

Judge Melgren next dismissed Plaintiff's federal claims for monetary damages against Defendants in the individual capacities based on qualified immunity. Specifically, Judge Melgren found that Plaintiff did not overcome the second prong of the qualified-immunity analysis because Plaintiff did not establish that the law at the time of the challenged conduct was clearly established such that every reasonable officer would have known that their actions violated Plaintiff's statutory or constitutional rights. Judge Melgren noted that Plaintiff cited no context-specific caselaw showing that Defendants violated a clearly established right and then went further and explained why *Stewart v. Norwood*, 2017 WL 4284971 (D. Kan. 2017), did not satisfy the second prong. Doc. 37 at 8-9.

Plaintiff's instant motion seeks reconsideration and argues *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980), and *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), renders the constitutional and statutory rights clearly established. Plaintiff does not explain why he failed to cite these cases during the initial briefing, which is sufficient to deny his reconsideration request on this point. *See Castanon v. Cathey*, 976 F.3d 1136, 1140-41 (10th Cir. 2020) (noting that a Rule 59(e) motion should not be used to advance arguments that could have been raised in prior briefing).

---

immunity prevented his federal and state claims for monetary damages against Defendants in their official capacities. His instant motion is the same and focuses solely on claims for injunctive relief. Doc. 47 at 2. Thus, he has never identified any substantive challenge to Defendants' argument (or Judge Melgren's ruling) that Eleventh Amendment immunity warrants dismissal of Plaintiff's federal and state-law claims for monetary damages asserted against Defendants in the official capacities. Thus, the Court agrees that Eleventh Amendment immunity warrants dismissal of such claims on this record. *See, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (explaining that "nonconsenting States may not be sued by private individuals in federal court"); *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) (noting that "[t]he immunity applies not only to suits against states, but also to damage suits brought against state officials in their official capacities"); *Madkins v. Platt*, 2017 WL 3149299, at *3 (D. Kan. 2017) (finding that federal courts lack jurisdiction to consider federal and state-law official-capacity damage claims because of Eleventh Amendment immunity).

But, even considering these cases, the Court finds that the cited cases are not analogous to this case and do not show that the law was clearly established in a narrowly tailored, context-specific manner. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (explaining that a plaintiff must identify case law addressing the context confronted by the defendant); *Webb's Fabulous Pharmacies*, 449 U.S. 155 (analyzing "whether it is constitutional for a county to take as its own, under the authority of a state statute, the interest accruing on an interpleader fund deposited in the registry of the county court, when a fee, prescribed by another statute, is also charged for the clerk's services in receiving the fund into the registry"); *Phillips*, 524 U.S. 156 ("The question presented by this case is whether interest earned on client funds held in IOLTA accounts is 'private property' of either the client or the attorney for purposes of the Takings Clause of the Fifth Amendment."). Because Plaintiff fails to show that reconsideration of the qualified-immunity portion of Judge Melgren's order is warranted, the Court denies that portion of his motion.[6]

### 3.   Plaintiff's state-law claims for monetary damages and injunctive relief against Defendants.

Judge Melgren then dismissed Plaintiff's state-law claims based on a lack of subject matter jurisdiction. Defendants argued that Judge Melgren should decline supplemental jurisdiction and that he otherwise lacked original jurisdiction over these claims. Plaintiff did not address supplemental but argued that diversity jurisdiction existed. Judge Melgren determined that Plaintiff did not satisfy his burden on the amount-in-controversy requirement. Doc. 37 at 13-14. Because Plaintiff had only argued about diversity jurisdiction and Judge Melgren found that lacking, Judge Melgren dismissed Plaintiff's state-law claims. *Id*. at 14.

---

[6]   In the briefing before Judge Melgren and in the instant briefing, neither party discusses whether qualified immunity applies to Plaintiff's RICO Act claims. *See, e.g.*, *Gonzalez v. Otero*, 172 F. Supp. 3d 477 (D.P.R. 2016) (finding qualified immunity bars RICO Act claims and citing cases). But, even if it did not, Plaintiff's RICO Act claims fail for the reasons discussed in the rest of this order.

In his motion to alter or amend, Plaintiff solely argues that Judge Melgren ignored certain amounts in controversy. First, Plaintiff contends that Judge Melgren ignored Plaintiff's $1,000,000 punitive damage request on page 24 of his complaint. But this page was not properly filed, and Plaintiff's failure to amend or correct his filing before Judge Melgren issued the order is not a ground for reconsideration. Second, Plaintiff argues that Judge Melgren did not consider the alleged interest due to other inmates. But Judge Melgren addressed and rejected that argument. Doc. 37 at 13. And a Rule 59(e) motion is not a vehicle to revisit issues already addressed. *Castanon*, 976 F.3d at 1140-41. Because Plaintiff fails to demonstrate that he is entitled to reconsideration of this aspect of Judge Melgren's order, the Court denies the portion of his motion challenging the dismissal of his state-law claims.[7]

### B.  Plaintiff's federal claims for injunctive relief against Defendants in their official capacities.

Judge Melgren's order technically leaves Plaintiff's federal claims against Defendants for injunctive relief in their individual <u>and</u> official capacities. But injunctive relief on Plaintiff's federal claims can only be sought against Defendants in their official capacities. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Thus, the only claims remaining after Judge Melgren's order are Plaintiff's federal claims against Defendants in their official capacities for injunctive relief. These claims are the subject of

---

[7]   The Court recognizes that Judge Melgren's order specifically addressed Plaintiff's state-law claims against Defendants in their individual capacities.But Judge Melgren's jurisdictional ruling would necessarily include all remaining aspects of Plaintiff's state-law claims (e.g., official-capacity claims for injunctive relief). And even if the jurisdictional analysis in Judge Melgren's order was incorrect or overlooked certain aspects of Plaintiff's state-law claims, the Court would decline to exercise supplemental jurisdiction over them at the conclusion of this order. 28 U.S.C. § 1367. At the end of this order, the Court will have resolved all federal claims and declines supplemental. Any arguably remaining state-law claims, regardless of relief sought, are better addressed in state court particularly given the nature of the allegations, the parties, and the state interests involved.

Defendants' pending summary judgment motion. To resolve this motion, the Court must initially determine the uncontroverted facts. This task is simplified because Plaintiff has not properly controverted any of Defendants' facts despite receiving notice of how to do so. The Court therefore deems Defendants' facts as admitted for purposes of this motion.[8]

1. **Plaintiff's federal claims for injunctive relief against Defendants Goddard, Pryor, Heimgartner, and Wildermuth in their official capacities.**

Defendants Goddard, Pryor, Heimgartner, and Wildermuth argue that they are entitled to summary judgment on Plaintiff's federal claims for injunctive relief in their official capacity based on Eleventh Amendment immunity. These four defendants note that Eleventh Amendment immunity broadly prohibits suits brought by individuals against state officials acting in their individual capacities. *Harris v. Owens*, 264 F.3d 1282, 1289-90 (10th Cir. 2001). But they recognize that there is a narrow exception to suits against a state officer in his official capacity seeking only prospective (as oppose to retroactive) injunctive relief. *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (citing *Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). The exception, which was recognized in *Ex Parte Young*, allows suits against a state officer acting in his official capacity if the plaintiff alleges an ongoing violation of federal law and seeks prospective injunctive relief.

---

[8]   With the motion for summary judgment, Defendants included the requisite "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment." Doc. 50. That notice attached the applicable summary judgment rules—Rule 56 and District of Kansas Rule 56.1—and advised Plaintiff that, to oppose summary judgment, he must submit evidence countering the facts asserted by Defendants and raising specific facts to support his claims. But none of Plaintiff's responses are properly supported with citations to the record and many do not respond to the substance of the matters asserted. Although recognizing that Plaintiff proceeds pro se, his pro se status neither excuses him from compliance with procedural rules nor shields him from the consequences of his noncompliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants"). This includes compliance with the District's local rules. *See Hamilton v. Dep't of Veterans Affairs*, 2016 WL 7326280, at *1 (D. Kan. 2016). Because Plaintiff has not properly controverted any of Defendants' facts, the Court deems those facts admitted for purposes of summary judgment. *See* D. Kan. R. 56.1(a); Fed. R. Civ. P. 56(e)(2).

*Gorenc v. Klaasen*, 421 F. Supp. 3d 1131, 1147 (D. Kan. 2019). But the plaintiff must show that the state official has the power to perform the required act and demonstrate a willingness to enforce the statute in question to overcome the jurisdictional bar of Eleventh Amendment immunity. *Moore v. Univ. of Kan.*, 118 F. Supp. 3d 1242, 1250 (D. Kan. 2015); *see also Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014) (noting that the plaintiff must adequately allege the individual official's duty to enforce the statute in question and his or her demonstrated willingness to do so for the exception to apply).

The four defendants then argue that Plaintiff has not (and cannot) show that they have the power to perform the sought prospective injunctive relief because: (1) Plaintiff has not shown how any of these four defendants have any authority or control over the pooled inmate trust fund accounts and (2) Plaintiff has not shown that Pryor and Heimgartner have the requisite policy-making authority and makes no attempt to tie Goddard and Wildermuth to the alleged deprivation. Plaintiff states in his response:

> Prison officials are not entitled to 11th Amendment immunity in their official capacity for declaratory and injunctive relief. Kentucky v. Graham, 473 U.S. 159, 167 (1985). The listed defendants are the KDOC officials that inmates have to exhaust their administrative remedies with and, ergo, are the individuals liable for the embezzlement. In their official capacity, these defendants are the State of Kansas, and while they do not have direct control over Plaintiff's money, they do have the capacity to initiate procedures to prevent the person in charge of the funds from embezzling the same.

Doc. 57 at 2.

Plaintiff does not respond to the substance of Goddard, Pryor, Heimgartner, and Wildermuth's argument, does not meaningfully controvert or provide facts, and has not shown that the narrow exception to Eleventh Amendment immunity for injunctive relief saves his claims. Instead, the uncontroverted facts show that these defendants have no authority or control over the pooled inmate trust fund account. The record indicates that the pooled inmate trust fund account

is operated by the Kansas Department of Corrections ("KDOC") Centralized Inmate Banking section. KDOC manages inmate trust fund accounts pursuant to K.S.A. § 76-175 and Inmate Management Policy and Procedure ("IMPP") 04-103.[9] K.S.A. § 76-175 authorizes the KDOC to make changes in how any interest accruing to inmate trust fund accounts is administered with approval of the State of Kansas Department of Administration Division of Accounts and Reports pursuant to an approval process contained in the Office of Accounts and Reports Policy Manual 10,852.[10] In 2005, KDOC received approval from the Director of Accounts and Reports to consolidate the inmate trust fund accounts into a centralized inmate trust fund account managed by a single designee acting for KDOC.[11] Melissa Brooke is KDOC's designated trust fund officer, and she is not a party to this action. Doc. 49-2 ¶ 2.

Plaintiff likewise fails to show a genuine issue of fact about whether Goddard, Pryor, Heimgartner, and Wildermuth have the requisite policy-making authority within the KDOC. Doc. 16-2. Plaintiff concedes that these Defendants do not have control over his money/bank account, but he then argues "they do have the capacity to initiate procedures to prevent the person in charge of the funds from embezzling them." Doc. 57 at 2. But he provides no facts to support this argument. He also fails to show that any of these four defendants have the authority to initiate such changes or have demonstrated a willingness to do so.[12]

---

[9]    IMPP 04-103 states that at the "close of the monthly interest earning period, interest earned on inmate trust fund less the applicable bank service fee shall be credited to each active account." A "bank service fee" is defined as: "Fees incurred for the monthly maintenance on the inmate trust fund."

[10]   K.S.A. § 76-175(b) states: "Interest earned on moneys invested under this section shall be regularly prorated according to procedures approved by the director of accounts and reports and credited to the individual patient, inmate or other account on the basis of the amount of money each patient, inmate or other person has in the trust fund."

[11]   KDOC has also received approval from the Director of Accounts and Reports for its procedure of deducting banking fees prior to disbursing any remaining residual interest to individual inmate accounts.

[12]   In another portion of his brief, Plaintiff cites to K.S.A. § 75-5257 to argue that, in conjunction with § 76-173, it is impossible for the interest earned on the inmate trust fund to be taken without the warden and trust fund manager agreeing to it. Doc. 34 at 5. But Plaintiff does not reconcile this argument with the statutes. K.S.A. § 75-5257

Plaintiff fails to show a genuine issue of fact on this claim. Because the uncontroverted facts show that Defendants Goddard, Pryor, Heimgartner, and Wildermuth do not have the power to perform the required act, the Court finds that Plaintiff's remaining official-capacity claims against these defendants are barred by the Eleventh Amendment. The Court grants this portion of the motion.

### 2. Plaintiff's federal claims for injunctive relief against Defendant Roberts in his official capacity.

#### i. Plaintiff did not exhaust his Fourteenth Amendment, RICO Act, and 42 U.S.C. § 1985 claims.

Plaintiff's sole surviving claims are his federal claims for injunctive relief against Defendant Roberts in his official capacity. This includes claims brought under the Fifth Amendment's Takings Clause, the Fourteenth Amendment's Due Process and Equal Protection Clauses, the RICO Act, and 42 U.S.C. § 1985. Defendant Roberts initially argues that he is entitled to summary judgment on all claims except Plaintiff's Fifth Amendment Takings Clause claim because Plaintiff did not exhaust his administrative remedies for these claims under the Prison Litigation Reform Act ("PLRA").

The PLRA provides that "[no] action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must properly comply with the prison's grievance procedures, and "substantial compliance" with the prison's grievance process is insufficient. *Fields v. Okla. St. Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "The inmate

---

provides for the warden to take charge of, and account for, property an inmate has in their possession when entering the correctional institution. K.S.A. § 76-173 generally authorizes the "chief administrative officer" of each state correctional facilities to designate an officer or employee of the institution to be in charge of the institution's trust funds. In the case of KDOC correctional facilities, this authority has been delegated to a single designee (Melissa Brooke), who has not been named as a defendant in this action.

must use all steps and do so properly so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "It should go without saying that in order for the agency to address the issues on the merits the claims raised in the administrative grievance process must have been the same as those presented in the subsequent complaint." *Goodrich v. Corrections Corp. of Am.*, 2015 WL 5781704, at *2 (D. Kan. 2015). "While a prisoner need not allege any particular legal theory, his grievance must be particular enough as to provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *Toevs v. Milyard*, 563 F. App'x 640, 644 (10th Cir. 2014) (quotation omitted). As such, the grievance must sufficiently alert prison officials to the legal basis on which the plaintiff will later challenge the negative action(s) taken against him. *Id.*

Here, Plaintiff filed a grievance with his Unit Team Manager requesting that all inmates within KDOC be reimbursed the interest that KDOC had failed to pay. Doc. 16-3 at 1. Specifically, Plaintiff stated:

> Kansas law mandates that KDOC pay inmates interest on their money being held in KDOC accounts. KDOC has not paid the inmate population their interest for several years now. Even more incredible, KDOC keeps taking $1 every month from every inmate for imaginary administration fees when the banking system is run on a computer program. I want the millions of dollars of interest owed to the inmate population, and former inmates, paid to them immediately, all of the administration involved to be fired and prosecuted.

Doc. 16-3 at 1.

Defendant Roberts argues that this grievance would not have alerted KDOC officials about Plaintiff's due process, equal protection, alleged conspiracy, or RICO Act concerns. Plaintiff responds by arguing:

> It is well settled that prisoners do not have to exhaust legal theories when they are administratively exhausting their claims. Griffin v.

> Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); Johnson v. Honson,
> 385 F.3d 503, 517 (5th Cir. 2004); Buron v. Jones, 321 F.3d 569,
> 575 (6th Cir. 2003). Plaintiff's claims are properly exhausted.

Doc. 57 at 2.

Plaintiff does not explain how his grievance would have alerted prison officials to his variety of other concerns or show a triable fact on this issue. Plaintiff alerted prison officials to the negative action they took against him (failing to pay interest), but he did not alert them to many of the bases on which he now challenges that action—violation of his due process and equal protection rights, conspiracy, or racketeering activities. Although the Court agrees that he is not required to detail each legal theory, his grievance must be particular enough to provide administrators with a fair opportunity under the circumstances to address the problem.[13] His grievance satisfies this requirement for his Fifth Amendment Takings Clause claim but not the litany of other claims he now asserts.

For example, Plaintiff's grievance never identifies the process he was denied such that the administrators could investigate that issue or the individuals engaged in the conspiracy. Because Plaintiff failed to show that he properly exhaust his due process, equal protection, RICO Act, and conspiracy claims as required by the PLRA, the Court grants summary judgment on these claims.[14] *See, e.g.*, *Valienterbanales v. Robinson*, 2006 WL 1540995, at *2 (W.D. Va. 2006) ("Because the plaintiff's grievances failed to provide fair notice of a race-related problem, the plaintiff's equal protection claim must be dismissed without prejudice."); *Sisney v. Reisch*, 2007 WL 951858, at *6 (S.D.S.D. 2007) ("Plaintiff was not required to state his legal theory of 'conspiracy' in the

---

[13]   It is uncontroverted that Plaintiff never filed any grievances mentioning due process or equal protection concerns, conspiracy, or the RICO Act.

[14]   Although Defendant Roberts is the sole remaining defendant, this ruling would apply equally to the other defendants. And this ruling applies to Plaintiff's requests for declaratory and injunctive relief.

grievances, but to give the administrators a fair opportunity to address these claims he needed to at least notify the administrators he believed there was an agreement to work together to cover up the alleged discrimination."). Defendants are therefore entitled to summary judgment on Plaintiff's equal protection, RICO Act, and conspiracy claims for failure to exhaust administrative remedies.[15]

> ii.  **Plaintiff fails to show a triable issue on his Fifth Amendment Takings Clause claim.**

This leaves Plaintiff's Fifth Amendment Takings Clause claim for injunctive relief against Defendant Roberts in his official capacity. Defendant Roberts argues that Plaintiff has not shown a violation of the Takings Clause because: (1) Plaintiff does not have a right under Kansas law to earn interest without paying banking fees, (2) KDOC's policy of deducting bank service fees incurred in maintaining inmate trust accounts before disbursing interest does not constitute a taking, and (3) there is no violation because just compensation would be nil. Plaintiff responds that money constitutes property that is protected by the Takings Clause and that his just compensation would be his percentage of the interest earned on the trust fund each month.

On the instant record, and assuming without deciding that Plaintiff has a protectable property interest, the Court finds that Plaintiff has not carried his substantial burden of establishing that his property was taken for public use without just compensation. The Fifth Amendment

---

[15] Defendants alternatively argue that these claims fail as a matter of law. The Court agrees for the reasons stated in Defendants' motion. Plaintiff's due process claim fails because he does not create a triable issue on whether Kansas law entitles Plaintiff to interest without fees on his inmate accounts. *See Petrick v. Fields*, 1996 WL 699706, at *1-2 (10th Cir. 1996) (holding that under Oklahoma law, plaintiff was not entitled to interest earned on funds in his prison accounts). Plaintiff's equal protection claim fails because Plaintiff does not come forward with facts showing that he is a member of a protected class or showing that he was individually targeted in an irrational or abusive manner. *See Payne v. Maye*, 525 F. App'x 854, 856-57 (10th Cir. 2013). Plaintiff's RICO Act claim fails because Plaintiff does not show a triable issue about a RICO enterprise, predicate acts, or a related injury. *See Ogles v. Security Benefit Life Ins. Co.*, 401 F. Supp. 3d 1210, 1221-24 (D. Kan. 2019). And Plaintiff's conspiracy claim fails because Plaintiff does not come forward with any facts showing an agreement and concerted action amongst Defendants. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

provides that "private property" shall not be "taken for public use, without just compensation." Takings claims require a legally cognizable property interest. *Stewart v. Norwood*, 2017 WL 4284971, at *10 (D. Kan. 2017) (quotation omitted). "A party challenging governmental action as an unconstitutional taking bears a substantial burden." *Taylor v. Sebelius*, 189 F. App'x 752, 758 (10th Cir. 2006).

First, Plaintiff has not carried his substantial burden of establishing that his property was taken for a public use. Plaintiff cites no specific case law on this point. He does not provide any facts suggesting that the interest earned on his account was used to pay bank fees for other inmates. *Cf. Stewart v. Norwood*, 2017 WL 4284971, at *11-13 (D. Kan. 2017) (finding public use when KDOC used the plaintiff's earned interest to help defray the cost of maintaining accounts other prisoners). And he does not otherwise develop his argument or tie it to relevant law. Instead he relies on speculation, which is not enough to carry his burden.

Second, Plaintiff also fails to carry his substantial burden of establishing that he was denied just compensation. Defendant Roberts argues that, if there was a taking, a mere technical taking does not give rise to an obligation to pay compensation. He cites *Brown v. Legal Foundation of Washington* for support.  538 U.S. 216 (2003). In that case, the Supreme Court held that there was "no constitutional violation when they were not compensated" because "the compensation due [to the plaintiffs] for any taking of their property would be nil." *Id.* at 240. Plaintiff responds that his just compensation would be his percentage of the interest earned on the trust fund each month. Plaintiff also argues that Defendants have produced no official bank records from the banking institution handling the trust fund to prove they charged bank fees against the certificates of deposit. Plaintiff does not address *Brown*, or otherwise cite any case law in support of his arguments.

"Just compensation" required by the Fifth Amendment is "measured by the property owner's loss rather than the government's gain." *Brown*, 538 U.S. at 235-36. And on the instant record, it is uncontroverted that interest was not paid on inmate trust accounts from 2012 to 2017 because the fees incurred for the monthly maintenance of the Inmate Trust Fund exceeded interest accrued due to the continuing economic downturn and falling interest rates. Doc. 49-2 at ¶ 6. In other words, KDOC's costs of administering the inmate accounts were so high, and the interest earned on Plaintiff's account so low, that there was no net loss and therefore no compensation owed. Indeed, an inmate sustains no net loss—and no compensation therefore is owed under the Takings Clause—as to interest attributable to his account that does not exceed the administrative costs attributable to the account. *See McIntyre v. Bayer*, 339 F.3d 1097, 1100-02 (9th Cir. 2003). "No compensation is owed under the Takings Clause as to that amount of interest—the amount that does not exceed administrative costs—<u>even if that amount is allocated to a public purpose, such as the offender's store fund</u>." *Irive v. Masto*, 2011 WL 6735880, at *2 (D. Nev. 2011) (emphasis in original). Plaintiff again fails to carry his substantial burden of establishing that he was denied just compensation. Defendant Roberts is entitled to summary judgment on Plaintiff's Fifth Amendment Takings Clause claim.[16]

## IV. CONCLUSION

The Court has analyzed each of Plaintiff's claims and arguments. The Court finds that Plaintiff has not shown that reconsideration of any adverse ruling in Judge Melgren's order is warranted. The Court also finds that Defendants are entitled to summary judgment on the remaining claims. The Court dismisses without prejudice all federal claims against Defendants

---

[16]   Again, this ruling would apply equally to the other defendants. And this ruling applies to Plaintiff's requests for declaratory and injunctive relief.

Goddard, Pryor, Heimgartner, and Wildermuth in their official capacities because they are barred by Eleventh Amendment immunity. The Court dismisses without prejudice the Fourteenth Amendment, RICO Act, and 42 U.S.C. § 1985 claims for injunctive relief against Defendant Roberts for failure to exhaust administrative remedies. Judgment shall be entered in Defendant Roberts's favor on Plaintiff's Takings Clause claim against him in his official capacity. And, to the extent necessary, any surviving state-law claim is dismissed without prejudice because the Court declines to exercise supplemental jurisdiction given the nature of the claims, the parties, and the interests involved.

THE COURT THEREFORE ORDERS that Plaintiff's motion to alter or amend judgment (Doc. 47) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's motion to strike (Doc. 56) is DENIED.

THE COURT FURTHER ORDERS that Defendants' Motion for Summary Judgment (Doc. 48) is GRANTED. The Court dismisses without prejudice all federal claims against Defendants Goddard, Pryor, Heimgartner, and Wildermuth in their official capacities as barred by Eleventh Amendment immunity. The Court dismisses without prejudice the Fourteenth Amendment, RICO Act, and 42 U.S.C. § 1985 claims for injunctive relief against Defendant Roberts in his official capacity for failure to exhaust administrative remedies. Judgment shall be entered in Defendant Roberts's favor on Plaintiff's Takings Clause claim that is asserted against him in his official capacity. And, to the extent necessary, any surviving state-law claim is dismissed without prejudice because the Court declines to exercise supplemental jurisdiction.

IT IS SO ORDERED.

Dated: July 13, 2021                            /s/ Holly L. Teeter
                                                HOLLY L. TEETER
                                                UNITED STATES DISTRICT JUDGE

# United States District Court

**------------------------- DISTRICT OF KANSAS-----------------------------**

| | |
|---|---|
| **JEFFREY J. SPERRY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:18-CV-3120-HLT-GEB** |
| **RAYMOND ROBERTS, JOHNNIE GODDARD, REX PRYOR, JAMES HEIMGARTNER, AND LINDSEY WILDERMUTH,** | |
| **Defendants.** | |

## JUDGMENT IN A CIVIL CASE

☐   Jury Verdict.  This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒   Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

Pursuant to the Order (Doc. 62), the Court dismisses without prejudice all federal claims against Defendants Goddard, Pryor, Heimgartner, and Wildermuth in their official capacities as barred by Eleventh Amendment immunity. The Court dismisses without prejudice the Fourteenth Amendment, RICO Act, and 42 U.S.C. § 1985 claims for injunctive relief against Defendant Roberts in his official capacity for failure to exhaust administrative remedies. Judgment is entered in Defendant Roberts's favor on Plaintiff's Takings Clause claim that is asserted against him in his official capacity. And, to the extent necessary, any surviving state-law claim is dismissed without prejudice because the Court declines to exercise supplemental jurisdiction. This case is closed.

IT IS SO ORDERED.

TIMOTHY O'BRIEN
CLERK OF THE COURT

Dated: July 13, 2021                    /s/  *M. Deaton*
                                        By Deputy Clerk

LII  > Federal Rules of Civil Procedure  > **Rule 1. Scope and Purpose**

# Rule 1. Scope and Purpose

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

### Notes

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

### Notes of Advisory Committee on Rules—1937

1. Rule 81 states certain limitations in the application of these rules to enumerated special proceedings.

2. The expression "district courts of the United States" appearing in the statute authorizing the Supreme Court of the United States to promulgate rules of civil procedure does not include the district courts held in the Territories and insular possessions. See *Mookini et al. v. United States*, 303 U.S. 201, 58 S.Ct. 543, 82 L.Ed. 748 (1938).

3. These rules are drawn under the authority of the act of June 19, 1934, U.S.C., Title 28, §723b [see 2072] (Rules in actions at law; Supreme Court authorized to make), and §723c [see 2072] (Union of equity and action at law rules; power of Supreme Court) and also other grants of rule making power to the Court. See Clark and Moore, *A New Federal Civil Procedure—I. The Background*, 44 Yale L.J. 387, 391 (1935). Under §723b after the rules have taken effect all laws in conflict therewith are of no further force or effect. In accordance with §723c the Court has united the ̲eral rules prescribed for cases in equity with those in actions at law so as to

practice in equity) and the [former] Equity Rules promulgated thereunder; U.S.C., Title 28, [former] §724 (Conformity act): [former] Equity Rule 22 (Action at Law Erroneously Begun as Suit in Equity—Transfer); [former] Equity Rule 23 (Matters Ordinarily Determinable at Law When Arising in Suit in Equity to be Disposed of Therein); U.S.C., Title 28, [former] §§397 (Amendments to pleadings when case brought to wrong side of court), and 398 (Equitable defenses and equitable relief in actions at law).

4. With the second sentence compare U.S.C., Title 28, [former] §§777 (Defects of form; amendments), 767 (Amendment of process); [former] Equity Rule 19 (Amendments Generally).

### Notes of Advisory Committee on Rules—1948 Amendment

The change in nomenclature conforms to the official designation of district courts in Title 28, U.S.C., §132(a).

### Notes of Advisory Committee on Rules—1966 Amendment

This is the fundamental change necessary to effect unification of the civil and admiralty procedure. Just as the 1938 rules abolished the distinction between actions at law and suits in equity, this change would abolish the distinction between civil actions and suits in admiralty. See also Rule 81.

### Notes of Advisory Committee on Rules—1993 Amendment

The purpose of this revision, adding the words "and administered" to the second sentence, is to recognize the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay. As officers of the court, attorneys share this responsibility with the judge to whom the case is assigned.

### Committee Notes on Rules—2007 Amendment

The language of Rule 1 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The merger of law, equity, and admiralty practice is complete. There is no need to carry forward the phrases that initially accomplished the merger.

The former reference to "suits of a civil nature" is changed to the more modern "civil actions and proceedings." This change does not affect such questions as whether the Civil Rules apply to summary proceedings created by statute. *See SEC v.*

Appellate Case: 21-3151      Document: 010110643594      Date Filed: 02/10/2022      Page: 84

The Civil Rules are the third set of the rules to be restyled. The restyled Rules of Appellate Procedure took effect in 1998. The restyled Rules of Criminal Procedure took effect in 2002. The restyled Rules of Civil Procedure apply the same general drafting guidelines and principles used in restyling the Appellate and Criminal Rules.

*1. General Guidelines*. Guidance in drafting, usage, and style was provided by Bryan Garner, *Guidelines for Drafting and Editing Court Rules*, Administrative Office of the United States Courts (1996) and Bryan Garner, *Dictionary of Modern Legal Usage* (2d ed. 1995). *See also* Joseph Kimble, *Guiding Principles for Restyling the Civil Rules*, in *Preliminary Draft of Proposed Style Revision of the Federal Rules of Civil Procedure* , at x [sic] (Feb. 2005) (available at http://www.uscourts.gov/rules/Prelim—draft—proposed—ptl.pdf).

*2. Formatting Changes*. Many of the changes in the restyled Civil Rules result from using format to achieve clearer presentation. The rules are broken down into constituent parts, using progressively indented subparagraphs with headings and substituting vertical for horizontal lists. "Hanging indents" are used throughout. These formatting changes make the structure of the rules graphic and make the restyled rules easier to read and understand even when the words are not changed. Rule 14(a) illustrates the benefits of formatting changes.

*3. Changes to Reduce Inconsistent, Ambiguous, Redundant, Repetitive, or Archaic Words*. The restyled rules reduce the use of inconsistent terms that say the same thing in different ways. Because different words are presumed to have different meanings, such inconsistencies can result in confusion. The restyled rules reduce inconsistencies by using the same words to express the same meaning. For example, consistent expression is achieved without affecting meaning by the changes from "infant" in many rules to "minor" in all rules; from "upon motion or on its own initiative" in Rule 4(m) and variations in many other rules to "on motion or on its own"; and from "deemed" to "considered" in Rules 5(c), 12(e), and elsewhere. Some variations of expression have been carried forward when the context made that appropriate. As an example, "stipulate," "agree," and "consent" appear throughout the rules, and "written" qualifies these words in some places but not others. The number of variations has been reduced, but at times the former words were carried forward. None of the changes, when made, alters the rule's meaning.

The restyled rules minimize the use of inherently ambiguous words. For example, the word "shall" can mean "must," "may," or something else, depending on context. The potential for confusion is exacerbated by the fact that "shall" is no longer generally used in spoken or clearly written English. The restyled rules replace "shall"

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 85

The restyled rules minimize the use of redundant "intensifiers." These are expressions that attempt to add emphasis, but instead state the obvious and create negative implications for other rules. "The court in its discretion may" becomes "the court may"; "unless the order expressly directs otherwise" becomes "unless the court orders otherwise." The absence of intensifiers in the restyled rules does not change their substantive meaning. For example, the absence of the word "reasonable" to describe the written notice of foreign law required in Rule 44.1 does not mean that "unreasonable" notice is permitted.

The restyled rules also remove words and concepts that are outdated or redundant. The reference to "at law or in equity" in Rule 1 has become redundant with the merger of law and equity. Outdated words and concepts include the reference to "demurrers, pleas, and exceptions" in Rule 7(c); the reference to "mesne" process in Rule 77(c); and the reference in Rule 81(f) to a now-abolished official position.

The restyled rules remove a number of redundant cross-references. For example, Rule 8(b) states that a general denial is subject to the obligations of Rule 11, but all pleadings are subject to Rule 11. Removing such cross-references does not defeat application of the formerly cross-referenced rule.

*4. Rule Numbers*. The restyled rules keep the same rule numbers to minimize the effect on research. Subdivisions have been rearranged within some rules to achieve greater clarity and simplicity. The only change that moves one part of a rule to another is the transfer of former Rule 25(d)(2) to Rule 17(d). The restyled rules include a comparison chart to make it easy to identify transfers of provisions between subdivisions and redesignations of some subdivisions.

*5. Other Changes*. The style changes to the rules are intended to make no changes in substantive meaning. A very small number of minor technical amendments that arguably do change meaning were approved separately from the restyled rules, but become effective at the same time. An example is adding "e-mail address" to the information that must be included in pleadings[.] These minor changes occur in Rules 4(k), 9(h), 11(a), 14(b), 16(c)(1), 26(g)(1), 30(b), 31, 40, 71.1, and 78.

*Changes Made After Publication and Comment.*

*Style Rules 1–86*

Most of the changes in Styles Rule [sic] 1–86 reflect style improvements made in response to public comments and continuing work by consultants, reporters, Subcommittees A and B, the Standing Committee Style Subcommittee, and the Advisory Committee. They are marked above [omitted] as changes made after

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 86

materials. Others are explained in the minutes of the May 2006 Civil Rules Committee meeting. A few changes—and decisions against change—deserve individual mention here as well.

Present Rule 1 says that the Rules govern "in all suits of a civil nature." Style Rule 1 as published changed this to "all civil actions and proceedings." Comments suggested that the addition of "proceedings" might inadvertently expand the domain governed by the Civil Rules. The Standing Committee Style Subcommittee was persuaded that "and proceedings" should be removed. Subcommittee A accepted this recommendation. Further consideration, however, persuaded the Advisory Committee that "and proceedings" should be retained. The reasons for concluding that the term "civil actions" does not express all of the events properly governed by the Rules are described in the draft Minutes for the May meeting. As noted in the introduction, the Committee Note to Rule 1 is expanded to include a general description of the Style Project.

Present Rule 25(a)(1) is a classic illustration of the "shall" trap. It says that "the action shall be dismissed as to" a deceased party unless a motion to substitute is made within 90 days after death is suggested on the record. Style Rule 25(a)(1) translated "shall" as "may," providing that the action "may be dismissed." This choice was bolstered by considering the effects of the Rule 6(b) authority to extend the 90-day period even after it expires. To say that the court "must" dismiss might distract attention from the alternative authority to extend the time and grant a motion to substitute. Comments suggested that "may" effects a substantive change. The comments took pains to express no view on the desirability of substantive change. The Committee concluded that it is better to replace "may" with "must," and to delete the Committee Note explanation of the Rule 6(b) reasons for concluding that "may" does not work a substantive change.

A syntactic ambiguity in Rule 65(d) was corrected in response to comments and further research demonstrating that the ambiguity resulted from inadvertent omission of a comma when the Rule was adopted to carry forward former 28 U.S.C. §363. As revised, Rule 65(d) clearly provides that an injunction binds a party only after actual notice. It also clearly provides that after actual notice of an injunction, the injunction binds a person in active concert or participation with a party's officers, agents, servants, employees, and attorneys. The change is explained further in the new paragraph added to the Rule 65 Committee Note.

Finally, the Committee decided not to change the approach taken to identifying shifts of material among subdivisions. The Bankruptcy Rules Committee urged that

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 87

Notes would be to alert future researchers—particularly those who rely on tightly focused electronic searches—to define search terms that will reach back before the Style Amendments took effect. The approach taken in the published Style Rules was to identify in Committee Notes only the one instance in which material was shifted between Rules—from Rule 25 to Rule 17. Forty-four shifts among subdivisions of the same rule were charted in Appendix B, "Current and Restyled Rules Comparison Chart" The chart is set out below [omitted]. The Committee decided again that this approach is better than the alternative of adding length to many of the Committee Notes. It can be expected that many rules publications will draw attention to the changes identified in the chart.

*Style-Substance Track*

Two rules published on the Style-Substance Track were abandoned.

Rule 8 would have been revised to call for "a demand for the relief sought, which may include alternative forms or different types of relief." Comments showed that the old-fashioned "relief in the alternative" better describes circumstances in which the pleader is uncertain as to the available forms of relief, or prefers a form of relief that may not be available.

Rule 36 would have been amended to make clear the rule that an admission adopted at a final pretrial conference can be withdrawn or amended only on satisfying the "manifest injustice" standard of Style Rule 16(e). Revisions of Style Rule 16(e) make this clear, avoiding the need to further amend Rule 36.

*"E-Discovery" Style Amendments: Rules 16, 26, 33, 34, 37, and 45*

As noted above [omitted], the Style revisions to the "e-discovery" amendments published for comment in 2004, before the Style Project was published for comment in 2005, are all "changes made after publication." All involve pure style. They can be evaluated by reading the overstrike-underline version set out above [omitted].

## Committee Notes on Rules—2015 Amendment

Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with — and indeed depends upon —
cooperative and proportional use of procedure.

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 88

LII  > Federal Rules of Civil Procedure

 > **Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing**

# Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(a) TIME TO SERVE A RESPONSIVE PLEADING.

(1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 89

(3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule

56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) MOTION FOR A MORE DEFINITE STATEMENT. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) JOINING MOTIONS.

(1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) WAIVING AND PRESERVING CERTAIN DEFENSES.

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)–(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 91

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) Hᴇᴀʀɪɴɢ Bᴇғᴏʀᴇ Tʀɪᴀʟ. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

### Nᴏᴛᴇs

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Nᴏᴛᴇs ᴏғ Aᴅᴠɪsᴏʀʏ Cᴏᴍᴍɪᴛᴛᴇᴇ ᴏɴ Rᴜʟᴇs—1937

*Note to Subdivision (a)*. 1. Compare [former] Equity Rules 12 (Issue of Subpoena—Time for Answer) and 31 (Reply—When Required—When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§9107, 9158; N.Y.C.P.A. (1937) §263; N.Y.R.C.P. (1937) Rules 109–111.

2. U.S.C., Title 28, §763 [now 547] (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have 60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. Insofar as any statutes not excepted in Rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] §45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

3. Compare the last sentence of [former] Equity Rule 29 (Defenses—How Presented) and N.Y.C.P.A. (1937) §283. See Rule 15(a) for time within which to plead to an amended pleading.

*Note to Subdivisions (b) and (d)*. 1. See generally [former] Equity Rules 29 (Defenses—How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties—Resisting Objection), and 44 (Defect of Parties—Tardy Objection); N.Y.C.P.A. (1937) §§277–280; N.Y.R.C.P. (1937) Rules 106–112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1–4; Clark, *Code Pleading* (1928) pp. 371–381.

∨ 2. For provisions authorizing defenses to be made in the answer or reply see *English*

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 92

procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] §45, substantially continued by this rule, provides: "No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc. (Deering, 1937) §433; 4 Nev.Comp.Laws (Hillyer, 1929) §8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) §431; 4 Nev.Comp.Laws (Hillyer, 1929) §8598.

3. [Former] Equity Rule 29 (Defenses—How Presented) abolished demurrers and provided that defenses in point of law arising on the face of the bill should be made by motion to dismiss or in the answer, with further provision that every such point of law going to the whole or material part of the cause or causes stated might be called up and disposed of before final hearing "at the discretion of the court." Likewise many state practices have abolished the demurrer, or retain it only to attack substantial and not formal defects. See 6 Tenn.Code Ann. (Williams, 1934) §8784; Ala.Code Ann. (Michie, 1928) §9479; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§15–18; Kansas Gen.Stat.Ann. (1935) §§60–705, 60–706.

*Note to Subdivision (c)*. Compare [former] Equity Rule 33 (Testing Sufficiency of Defense); N.Y.R.C.P. (1937) Rules 111 and 112.

*Note to Subdivisions (e)* and (f). Compare [former] Equity Rules 20 (Further and Particular Statement in Pleading May Be Required) and 21 (Scandal and Impertinence); *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 7, 7a, 7b, 8; 4 Mont.Rev.Codes Ann. (1935) §§9166, 9167; N.Y.C.P.A. (1937) §247; N.Y.R.C.P. (1937) Rules 103, 115, 116, 117; Wyo.Rev.Stat.Ann. (Courtright, 1931) §§89–1033, 89–1034.

*Note to Subdivision (g)*. Compare Rules of the District Court of the United States for the District of Columbia (1937), Equity Rule 11; N.M. Rules of Pleading, Practice and Procedure, 38 N.M.Rep. vii [105–408] (1934); Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e) and (f).

*Note to Subdivision (h)*. Compare Calif.Code Civ.Proc. (Deering, 1937) §434; 2 Minn.Stat. (Mason, 1927) §9252; N.Y.C.P.A. (1937) §§278 and 279; Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e). This rule continues U.S.C., Title 28, §80 [now 1359, 1447, 1919] (Dismissal or remand) (of action over which district court lacks jurisdiction), while U.S.C., Title 28, §399 [now 1653] (Amendments to show diverse citizenship) is continued by Rule 15.

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 93

*Subdivision (a)*. Various minor alterations in language have been made to improve the statement of the rule. All references to bills of particulars have been stricken in accordance with changes made in subdivision (e).

*Subdivision (b)*. The addition of defense (7), "failure to join an indispensable party", cures an omission in the rules, which are silent as to the mode of raising such failure. See Commentary, *Manner of Raising Objection of Non-Joinder of Indispensable Party* (1940) 2 Fed.Rules Serv. 658 and (1942) 5 Fed.Rules Serv. 820. In one case, *United States v. Metropolitan Life Ins. Co*. (E.D.Pa. 1941) 36 F.Supp. 399, the failure to join an indispensable party was raised under Rule 12(c).

Rule 12(b)(6), permitting a motion to dismiss for failure of the complaint to state a claim on which relief can be granted, is substantially the same as the old demurrer for failure of a pleading to state a cause of action. Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions or otherwise, may not be introduced in support of the motion, or to resist it. On the other hand, in many cases the district courts have permitted the introduction of such material. When these cases have reached circuit courts of appeals in situations where the extraneous material so received shows that there is no genuine issue as to any material question of fact and that on the undisputed facts as disclosed by the affidavits or depositions, one party or the other is entitled to judgment as a matter of law, the circuit courts, properly enough, have been reluctant to dispose of the case merely on the face of the pleading, and in the interest of prompt disposition of the action have made a final disposition of it. In dealing with such situations the Second Circuit has made the sound suggestion that whatever its label or original basis, the motion may be treated as a motion for summary judgment and disposed of as such. *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594, cert. den. (1942) 317 U.S. 686; *Boro Hall Corp. v. General Motors Corp*. (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695. See also *Kithcart v. Metropolitan Life Ins. Co*. (C.C.A.8th, 1945) 150 F.(2d) 997, aff'g 62 F.Supp. 93.

It has also been suggested that this practice could be justified on the ground that the federal rules permit "speaking" motions. The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments, and, of course, in such a situation, when the case reaches the circuit court of appeals, that court should treat the motion in the same

and if there is such a thing its limitations are undefined. Where extraneous matter is received, by tying further proceedings to the summary judgment rule the courts have a definite basis in the rules for disposing of the motion.

The Committee emphasizes particularly the fact that the summary judgment rule does not permit a case to be disposed of by judgment on the merits on affidavits, which disclose a conflict on a material issue of fact, and unless this practice is tied to the summary judgment rule, the extent to which a court, on the introduction of such extraneous matter, may resolve questions of fact on conflicting proof would be left uncertain.

The decisions dealing with this general situation may be generally grouped as follows: (1) cases dealing with the use of affidavits and other extraneous material on motions; (2) cases reversing judgments to prevent final determination on mere pleading allegations alone.

Under group (1) are: *Boro Hall Corp. v. General Motors Corp*. (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695; *Gallup v. Caldwell* (C.C.A.3d, 1941) 120 F.(2d) 90; *Central Mexico Light & Power Co. v. Munch* (C.C.A.2d, 1940) 116 F.(2d) 85; *National Labor Relations Board v. Montgomery Ward & Co*. (App.D.C. 1944) 144 F.(2d) 528, cert. den. (1944) 65 S.Ct. 134; *Urquhart v. American-La France Foamite Corp*. (App.D.C. 1944) 144 F.(2d) 542; *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594; *Cohen v. American Window Glass Co*. (C.C.A.2d, 1942) 126 F.(2d) 111; *Sperry Products Inc. v. Association of American Railroads* (C.C.A.2d, 1942) 132 F.(2d) 408; *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna and Western R. Co*. (C.C.A.2d, 1946) 157 F.(2d) 417; *Weeks v. Bareco Oil Co*. (C.C.A.7th, 1941) 125 F.(2d) 84; *Carroll v. Morrison Hotel Corp*. (C.C.A.7th, 1945) 149 F.(2d) 404; *Victory v. Manning* (C.C.A.3rd, 1942) 128 F.(2d) 415; *Locals No. 1470, No. 1469, and 1512 of International Longshoremen's Association v. Southern Pacific Co*. (C.C.A.5th, 1942) 131 F.(2d) 605; *Lucking v. Delano* (C.C.A.6th, 1942) 129 F.(2d) 283; *San Francisco Lodge No. 68 of International Association of Machinists v. Forrestal* (N.D.Cal. 1944) 58 F.Supp. 466; *Benson v. Export Equipment Corp*. (N. Mex. 1945) 164 P.2d 380 (construing New Mexico rule identical with Rule 12(b)(6); *F. E. Myers & Bros. Co. v. Gould Pumps, Inc*. (W.D.N.Y. 1946) 9 Fed.Rules Serv. 12b.33, Case 2, 5 F.R.D. 132. Cf. *Kohler v. Jacobs* (C.C.A.5th, 1943) 138 F.(2d) 440; *Cohen v. United States* (C.C.A.8th, 1942) 129 F.(2d) 733.

Under group (2) are: *Sparks v. England* (C.C.A.8th, 1940) 113 F.(2d) 579; *Continental Collieries, Inc. v. Shober* (C.C.A.3d, 1942) 130 F.(2d) 631; *Downey v. Palmer* (C.C.A.2d 1940) 114 F.(2d) 116; *DeLoach v. Crowley's Inc*. (C.C.A.5th, 1942)

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 95

*Co. v. Edward Katzinger Co*. (C.C.A.7th, 1941) 123 F.(2d) 518; *Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc*. (C.C.A.8th, 1942) 131 F.(2d) 419; *Publicity Bldg. Realty Corp. v. Hannegan* (C.C.A.8th, 1943) 139 F.(2d) 583; *Dioguardi v. Durning* (C.C.A.2d, 1944) 139 F.(2d) 774; *Package Closure Corp. v. Sealright Co., Inc*. (C.C.A.2d, 1944) 141 F.(2d) 972; *Tahir Erk v. Glenn L. Martin Co*. (C.C.A.4th, 1941) 116 F.(2d) 865; *Bell v. Preferred Life Assurance Society of Montgomery, Ala*. (1943) 320 U.S. 238.

The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

*Subdivision (c)*. The sentence appended to subdivision (c) performs the same function and is grounded on the same reasons as the corresponding sentence added in subdivision (b).

*Subdivision (d)*. The change here was made necessary because of the addition of defense (7) in subdivision (b).

*Subdivision (e)*. References in this subdivision to a bill of particulars have been deleted, and the motion provided for is confined to one for a more definite statement, to be obtained only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question. With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose. *Slusher v. Jones* (E.D.Ky. 1943) 7 Fed.Rules Serv. 12e.231, Case 5, 3 F.R.D. 168; *Best Foods, Inc. v. General Mills, Inc*. (D.Del. 1943) 7 Fed.Rules Serv. 12e.231, Case 7, 3 F.R.D. 275; *Braden v. Callaway* (E.D.Tenn. 1943) 8 Fed.Rules Serv. 12e.231, Case 1 (". . . most courts . . . conclude that the definiteness required is only such as will be sufficient for the party to prepare responsive pleadings"). Accordingly, the reference to the 20 day time limit has also been eliminated, since the purpose of this present

Appellate Case: 21-3151　　Document: 010110643594　　Date Filed: 02/10/2022　　Page: 96

Rule 12(e) as originally drawn has been the subject of more judicial rulings than any other part of the rules, and has been much criticized by commentators, judges and members of the bar. See general discussion and cases cited in 1 *Moore's Federal Practice* (1938), Cum.Supplement §12.07, under "Page 657"; also, Holtzoff, *New Federal Procedure and the Courts* (1940) 35–41. And compare vote of Second Circuit Conference of Circuit and District Judges (June 1940) recommending the abolition of the bill of particulars; *Sun Valley Mfg. Co. v. Mylish* (E.D.Pa. 1944) 8 Fed.Rules Serv. 12e.231, Case 6 ("Our experience . . . has demonstrated not only that 'the office of the bill of particulars is fast becoming obsolete' . . . but that in view of the adequate discovery procedure available under the Rules, motions for bills of particulars should be abolished altogether."); *Walling v. American Steamship Co*. (W.D.N.Y. 1945) 4 F.R.D. 355, 8 Fed.Rules Serv. 12e.244, Case 8 (". . . the adoption of the rule was ill advised. It has led to confusion, duplication and delay.") The tendency of some courts freely to grant extended bills of particulars has served to neutralize any helpful benefits derived from Rule 8, and has overlooked the intended use of the rules on depositions and discovery. The words "or to prepare for trial"—eliminated by the proposed amendment—have sometimes been seized upon as grounds for compulsory statement in the opposing pleading of all the details which the movant would have to meet at the trial. On the other hand, many courts have in effect read these words out of the rule. See *Walling v. Alabama Pipe Co*. (W.D.Mo. 1942) 6 Fed.Rules Serv. 12e.244, Case 7; *Fleming v. Mason & Dixon Lines, Inc*. (E.D.Tenn. 1941) 42 F.Supp. 230; *Kellogg Co. v. National Biscuit Co*. (D.N.J. 1941) 38 F.Supp. 643; *Brown v. H. L. Green Co*. (S.D.N.Y. 1943) 7 Fed.Rules Serv. 12e.231, Case 6; *Pedersen v. Standard Accident Ins. Co*. (W.D.Mo. 1945) 8 Fed.Rules Serv. 12e.231, Case 8; *Bowles v. Ohse* (D.Neb. 1945) 4 F.R.D. 403, 9 Fed.Rules Serv. 12e.231, Case 1; *Klages v. Cohen* (E.D.N.Y. 1945) 9 Fed.Rules Serv. 8a.25, Case 4; *Bowles v. Lawrence* (D.Mass. 1945) 8 Fed.Rules Serv. 12e.231, Case 19; *McKinney Tool & Mfg. Co. v. Hoyt* (N.D.Ohio 1945) 9 Fed.Rules Serv. 12e.235, Case 1; *Bowles v. Jack* (D.Minn. 1945) 5 F.R.D. 1, 9 Fed.Rules Serv. 12e.244, Case 9. And it has been urged from the bench that the phrase be stricken. *Poole v. White* (N.D.W.Va. 1941). 5 Fed.Rules Serv. 12e.231, Case 4, 2 F.R.D. 40. See also *Bowles v. Gabel* (W.D.Mo. 1946) 9 Fed.Rules Serv. 12e.244, Case 10 ("The courts have never favored that portion of the rules which undertook to justify a motion of this kind for the purpose of aiding counsel in preparing his case for trial.").

*Subdivision (f)*. This amendment affords a specific method of raising the insufficiency of a defense, a matter which has troubled some courts, although attack has been permitted in one way or another. See *Dysart v. Remington-Rand, Inc*. (D.Conn. 1939) 31 F.Supp. 296; *Eastman Kodak Co. v. McAuley* (S.D.N.Y. 1941) 4

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 97

Fed.Rules Serv. 12b.51, Case 3, 1 F.R.D. 643; *Teiger v. Stephan Oderwald, Inc*. (S.D.N.Y. 1940) 31 F.Supp. 626; *Teplitsky v. Pennsylvania R. Co*. (N.D.Ill. 1941) 38 F.Supp. 535; *Gallagher v. Carroll* (E.D.N.Y. 1939) 27 F.Supp. 568; *United States v. Palmer* (S.D.N.Y. 1939) 28 F.Supp. 936. And see *Indemnity Ins. Co. of North America v. Pan American Airways, Inc*. (S.D.N.Y. 1944) 58 F.Supp. 338; Commentary, *Modes of Attacking Insufficient Defenses in the Answer* (1939) 1 Fed.Rules Serv. 669 (1940) 2 Fed.Rules Serv. 640.

*Subdivision (g)*. The change in title conforms with the companion provision in subdivision (h).

The alteration of the "except" clause requires that other than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the rule, must include in one motion all that are then available to him. Under the original rule defenses which could be raised by motion were divided into two groups which could be the subjects of two successive motions.

*Subdivision (h)*. The addition of the phrase relating to indispensable parties is one of necessity.

### Notes of Advisory Committee on Rules—1963 Amendment

This amendment conforms to the amendment of Rule 4(e). See also the Advisory Committee's Note to amended Rule 4(b).

### Notes of Advisory Committee on Rules—1966 Amendment

*Subdivision (b)(7)*. The terminology of this subdivision is changed to accord with the amendment of Rule 19. See the Advisory Committee's Note to Rule 19, as amended, especially the third paragraph therein before the caption "Subdivision (c)."

*Subdivision (g)*. Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case. For exceptions to the requirement of consolidation, see the last clause of subdivision (g), referring to new subdivision (h)(2).

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 98

his answer * * *." If the clause "if he has made no motion," was read literally, it seemed that the omitted defense was waived and could not be pleaded in the answer. On the other hand, the clause might be read as adding nothing of substance to the preceding words; in that event it appeared that a defense was not waived by reason of being omitted from the motion and might be set up in the answer. The decisions were divided. Favoring waiver, see *Keefe v. Derounian*, 6 F.R.D. 11 (N.D.Ill. 1946); *Elbinger v. Precision Metal Workers Corp.*, 18 F.R.D. 467 (E.D.Wis. 1956); see also *Rensing v. Turner Aviation Corp.*, 166 F.Supp. 790 (N.D.Ill. 1958); *P. Beiersdorf & Co. v. Duke Laboratories, Inc.*, 10 F.R.D. 282 (S.D.N.Y. 1950); *Neset v. Christensen*, 92 F.Supp. 78 (E.D.N.Y. 1950). Opposing waiver, see *Phillips v. Baker*, 121 F.2d 752 (9th Cir. 1941); *Crum v. Graham*, 32 F.R.D. 173 (D.Mont. 1963) (regretfully following the Phillips case); see also *Birnbaum v. Birrell*, 9 F.R.D. 72 (S.D.N.Y. 1948); *Johnson v. Joseph Schlitz Brewing Co.*, 33 F.Supp. 176 (E.D.Tenn. 1940); cf. *Carter v. American Bus Lines, Inc.*, 22 F.R.D. 323 (D.Neb. 1958).

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)–(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereof to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading.

Since the language of the subdivisions is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver. It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 99

Subdivision (a) is divided into paragraphs for greater clarity, and paragraph (1)(B) is added to reflect amendments to Rule 4. Consistent with Rule 4(d)(3), a defendant that timely waives service is allowed 60 days from the date the request was mailed in which to respond to the complaint, with an additional 30 days afforded if the request was sent out of the country. Service is timely waived if the waiver is returned within the time specified in the request (30 days after the request was mailed, or 60 days if mailed out of the country) and before being formally served with process. Sometimes a plaintiff may attempt to serve a defendant with process while also sending the defendant a request for waiver of service; if the defendant executes the waiver of service within the time specified and before being served with process, it should have the longer time to respond afforded by waiving service.

The date of sending the request is to be inserted by the plaintiff on the face of the request for waiver and on the waiver itself. This date is used to measure the return day for the waiver form, so that the plaintiff can know on a day certain whether formal service of process will be necessary; it is also a useful date to measure the time for answer when service is waived. The defendant who returns the waiver is given additional time for answer in order to assure that it loses nothing by waiving service of process.

## Committee Notes on Rules—2000 Amendment

Rule 12(a)(3)(B) is added to complement the addition of Rule 4(i)(2)(B). The purposes that underlie the requirement that service be made on the United States in an action that asserts individual liability of a United States officer or employee for acts occurring in connection with the performance of duties on behalf of the United States also require that the time to answer be extended to 60 days. Time is needed for the United States to determine whether to provide representation to the defendant officer or employee. If the United States provides representation, the need for an extended answer period is the same as in actions against the United States, a United States agency, or a United States officer sued in an official capacity.

An action against a former officer or employee of the United States is covered by subparagraph (3)(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time to answer.

*GAP Report*. No changes are recommended for Rule 12 as published.

## Committee Notes on Rules—2007 Amendment

⌄  The language of Rule 12 has been amended as part of the general restyling of the

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 100

Former Rule 12(a)(4)(A) referred to an order that postpones disposition of a motion "until the trial on the merits." Rule 12(a)(4) now refers to postponing disposition "until trial." The new expression avoids the ambiguity that inheres in "trial on the merits," which may become confusing when there is a separate trial of a single issue or another event different from a single all-encompassing trial.

*Changes Made After Publication and Comment*. See Note to Rule 1, supra.

### Committee Notes on Rules—2009 Amendment

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

‹ Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions up Rule 13. Counterclaim and Crossclaim ›

💼 Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure: Overview

‹ **982**

⌄

LII  > Federal Rules of Civil Procedure
 > **Rule 7. Pleadings Allowed; Form of Motions and Other Papers**

# Rule 7. Pleadings Allowed; Form of Motions and Other Papers

(a) PLEADINGS. Only these pleadings are allowed:

   (1) a complaint;

   (2) an answer to a complaint;

   (3) an answer to a counterclaim designated as a counterclaim;

   (4) an answer to a crossclaim;

   (5) a third-party complaint;

   (6) an answer to a third-party complaint; and

   (7) if the court orders one, a reply to an answer.

(b) MOTIONS AND OTHER PAPERS.

   (1) *In General.* A request for a court order must be made by motion. The motion must:

      (A) be in writing unless made during a hearing or trial;

      (B) state with particularity the grounds for seeking the order; and

      (C) state the relief sought.

   (2) *Form.* The rules governing captions and other matters of form in pleadings apply to motions and other papers.

**NOTES**

amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr.

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 102

1. A provision designating pleadings and defining a motion is common in the State practice acts. See Ill.Rev.Stat. (1937), ch. 110, §156 (Designation and order of pleadings); 2 Minn.Stat. (Mason, 1927) §9246 (Definition of motion); and N.Y.C.P.A. (1937) §113 (Definition of motion). Former Equity Rules 18 (Pleadings—Technical Forms Abrogated), 29 (Defenses—How Presented), and 33 (Testing Sufficiency of Defense) abolished technical forms of pleading, demurrers, and pleas, and exceptions for insufficiency of an answer.

2. *Note to Subdivision (a)*. This preserves the substance of [former] Equity Rule 31 (Reply—When Required—When Cause at Issue). Compare the English practice, English Rules Under the Judicature Act (The Annual Practice, 1937) O. 23, r.r. 1, 2 (Reply to counterclaim; amended, 1933, to be subject to the rules applicable to defenses, O. 21). See O. 21, r.r. 1–14; O. 27, r. 13 (When pleadings deemed denied and put in issue). Under the codes the pleadings are generally limited. A reply is sometimes required to an affirmative defense in the answer. 1 Colo.Stat.Ann. (1935) §66; Ore.Code Ann. (1930) §§1–614, 1–616. In other jurisdictions no reply is necessary to an affirmative defense in the answer, but a reply may be ordered by the court. N.C.Code Ann. (1935) §525; 1 S.D.Comp.Laws (1929) §2357. A reply to a counterclaim is usually required. Ark.Civ.Code (Crawford, 1934) §§123–125; Wis.Stat. (1935) §§263.20, 263.21. U.S.C., Title 28, [former] §45 (District courts; practice and procedure in certain cases) is modified insofar as it may dispense with a reply to a counterclaim.

For amendment of pleadings, see Rule 15 dealing with amended and supplemental pleadings.

3. All statutes which use the words "petition", "bill of complaint", "plea", "demurrer", and other such terminology are modified in form by this rule.

### Notes of Advisory Committee on Rules—1946 Amendment

This amendment [to subdivision (a)] eliminates any question as to whether the compulsory reply, where a counterclaim is pleaded, is a reply only to the counterclaim or is a general reply to the answer containing the counterclaim. See Commentary, *Scope of Reply Where Defendant Has Pleaded Counterclaim* (1939) 1 Fed.Rules Serv. 672; *Fort Chartres and Ivy Landing Drainage and Levee District No. Five v. Thompson* (E.D.Ill. 1945) 8 Fed.Rules Serv. 13.32, Case 1.

### Notes of Advisory Committee on Rules—1963 Amendment

Certain redundant words are eliminated and the subdivision is modified to reflect the amendment of Rule 14(a) which in certain cases eliminates the requirement of

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 103

One of the reasons sanctions against improper motion practice have been employed infrequently is the lack of clarity of Rule 7. That rule has stated only generally that the pleading requirements relating to captions, signing, and other matters of form also apply to motions and other papers. The addition of Rule 7(b)(3) makes explicit the applicability of the signing requirement and the sanctions of Rule 11, which have been amplified.

### Committee Notes on Rules—2007 Amendment

The language of Rule 7 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 7(a) stated that "there shall be * * * an answer to a cross-claim, if the answer contains a cross-claim * * *." Former Rule 12(a)(2) provided more generally that "[a] party served with a pleading stating a cross-claim against that party shall serve an answer thereto * * *." New Rule 7(a) corrects this inconsistency by providing for an answer to a crossclaim.

For the first time, Rule 7(a)(7) expressly authorizes the court to order a reply to a counterclaim answer. A reply may be as useful in this setting as a reply to an answer, a third-party answer, or a crossclaim answer.

Former Rule 7(b)(1) stated that the writing requirement is fulfilled if the motion is stated in a written notice of hearing. This statement was deleted as redundant because a single written document can satisfy the writing requirements both for a motion and for a Rule 6(c)(1) notice.

The cross-reference to Rule 11 in former Rule 7(b)(3) is deleted as redundant. Rule 11 applies by its own terms. The force and application of Rule 11 are not diminished by the deletion.

Former Rule 7(c) is deleted because it has done its work. If a motion or pleading is described as a demurrer, plea, or exception for insufficiency, the court will treat the paper as if properly captioned.

‹ TITLE III. PLEADINGS AND MOTIONS  up  Rule 7.1. Disclosure Statement ›

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 104

LII  > Federal Rules of Civil Procedure  **> Rule 56. Summary Judgment**

# Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

   (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

      (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

      (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

   (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

   (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) JUDGMENT INDEPENDENT OF THE MOTION. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party;or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) FAILING TO GRANT ALL THE REQUESTED RELIEF. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

(h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)

## Notes of Advisory Committee on Rules—1937

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. *Report of the Commission on the Administration of Justice in New York State* (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) §14260) and Illinois (Ill.Rev.Stat. (1937) ch. 110, §§181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

*Note to Subdivision (d)*. See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the *Note* thereto.

*Note to Subdivisions (e) and (f)*. These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

## Notes of Advisory Committee on Rules—1946 Amendment

*Subdivision (a)*. The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has

been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco* (N.D.Cal. 1944) 58 F.Supp. 25, the plaintiff's counter-motion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc*. (C.C.A.2d, 1939) 107 F.(2d) 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself serves a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

*Subdivision (c)*. The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp*. (1944) 321 U.S. 620. See also Commentary, *Summary Judgment as to Damages* (1944) 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co*. (C.C.A.2d, 1945) 147 F.(2d) 399, cert. den. (1945) 325 U.S. 861. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

*Subdivision (d)*. Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co*. (C.C.A.7th, 1942) 130 F.(2d) 535; *Biggins v. Oltmer Iron Works* (C.C.A.7th, 1946) 154 F.(2d) 214; 3 *Moore's Federal Practice* (1938). 3190–3192. Since interlocutory appeals are not allowed, except where specifically provided by statute (see 3 *Moore, op. cit. supra*, 3155–3156) this interpretation is in line with that policy,

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 108

*Leonard v. Socony-Vacuum Oil Co., supra*. See also *Audi Vision Inc., v. RCA Mfg. Co*. (C.C.A.2d, 1943) 136 F.(2d) 621; *Toomey v. Toomey* (App.D.C. 1945) 149 F.(2d) 19; *Biggins v. Oltmer Iron Works, supra; Catlin v. United States* (1945) 324 U.S. 229.

### Notes of Advisory Committee on Rules—1963 Amendment

*Subdivision (c)*. By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, *Federal Practice and Procedure* 159–60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

*Subdivision (e)*. The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp*., 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern*, 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc*., 191 F.Supp. 383 (D.Del. 1961); *Jamison v. Pennsylvania Salt Mfg. Co*., 22 F.R.D. 238 (W.D.Pa. 1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries*, 139 F.Supp. 542 (E.D.Pa. 1956); *Levy v. Equitable Life Assur. Society*, 18 F.R.D. 164 (E.D.Pa. 1955).

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 *Moore's Federal Practice* 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, §1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

Appellate Case: 21-3151     Document: 010110643594     Date Filed: 02/10/2022     Page: 109

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

### Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

### Committee Notes on Rules—2007 Amendment

The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete. Rule 56 applies to third-party claimants, intervenors, claimants in interpleader, and others. Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Former Rule 56(c), (d), and (e) stated circumstances in which summary judgment "shall be rendered," the court "shall if practicable" ascertain facts existing without substantial controversy, and "if appropriate, shall" enter summary judgment. In each place "shall" is changed to "should." It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256 –257 (1948). Many lower court decisions are gathered in 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, §2728. "Should" in amended Rule 56(c) recognizes that courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact. Similarly sparing

Appellate Case: 21-3151      Document: 010110643594      Date Filed: 02/10/2022      Page: 110

exercise of this discretion is appropriate under Rule 56(e)(2). Rule 56(d)(1), on the other hand, reflects the more open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.

Former Rule 56(d) used a variety of different phrases to express the Rule 56(c) standard for summary judgment—that there is no genuine issue as to any material fact. Amended Rule 56(d) adopts terms directly parallel to Rule 56(c).

## Committee Notes on Rules—2009 Amendment

The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.

The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses, are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages—including separation of expert-witness discovery from other discovery.

Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.

If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

## Committee Notes on Rules—2010 Amendment

Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

*Subdivision (a).* Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine "issue" becomes genuine "dispute." "Dispute" better reflects the focus of a summary-

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 111

judgment determination. As explained below, "shall" also is restored to the place it held from 1938 to 2007.

The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

"Shall" is restored to express the direction to grant summary judgment. The word "shall" in Rule 56 acquired significance over many decades of use. Rule 56 was amended in 2007 to replace "shall" with "should" as part of the Style Project, acting under a convention that prohibited any use of "shall." Comments on proposals to amend Rule 56, as published in 2008, have shown that neither of the choices available under the Style Project conventions — "must" or "should" — is suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact. Compare *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case in which there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 * * * (1948))," with *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Eliminating "shall" created an unacceptable risk of changing the summary-judgment standard. Restoring "shall" avoids the unintended consequences of any other word.

Subdivision (a) also adds a new direction that the court should state on the record the reasons for granting or denying the motion. Most courts recognize this practice. Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings. It is particularly important to state the reasons for granting summary judgment. The form and detail of the statement of reasons are left to the court's discretion.

The statement on denying summary judgment need not address every available reason. But identification of central issues may help the parties to focus further proceedings.

*Subdivision (b).* The timing provisions in former subdivisions (a) and (c) are superseded. Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until

the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

*Subdivision (c).* Subdivision (c) is new. It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules.

Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support. Different courts and judges have adopted different forms including, for example, directions that the support be included in the motion, made part of a separate statement of facts, interpolated in the body of a brief or memorandum, or provided in a separate statement of facts included in a brief or memorandum.

Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record — including materials referred to in an affidavit or declaration — must be placed in the record. Once materials are in the record, the court may, by order in the case, direct that the materials be gathered in an appendix, a party may voluntarily submit an appendix, or the parties may submit a joint appendix. The appendix procedure also may be established by local rule. Pointing to a specific location in an appendix satisfies the citation requirement. So too it may be convenient to direct that a party assist the court in locating materials buried in a voluminous record.

Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record. Nonetheless, the rule also recognizes that a court

Appellate Case: 21-3151      Document: 010110643594      Date Filed: 02/10/2022      Page: 113

may consider record materials not called to its attention by the parties.

Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.

A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.

*Subdivision (d).* Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).

A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion.

*Subdivision (e).* Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c). As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

Subdivision (e)(2) authorizes the court to consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied. This approach reflects the "deemed admitted" provisions in many local rules. The fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings. And the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute.

Subdivision (e)(3) recognizes that the court may grant summary judgment only if the motion and supporting materials — including the facts considered undisputed under subdivision (e)(2) — show that the movant is entitled to it. Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed. Once the court has determined the set of facts — both those it has chosen to consider undisputed for

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 114

want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply — it must determine the legal consequences of these facts and permissible inferences from them.

Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record. Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant.

*Subdivision (f).* Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. After giving notice and a reasonable time to respond the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own. In many cases it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c).

*Subdivision (g).* Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

*Subdivision (h).* Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See*

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 115

Cecil & Cort, Federal Judicial Center Memorandum on Federal Rule of Civil Procedure 56 (g) Motions for Sanctions (April 2, 2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

*Changes Made After Publication and Comment*

**Subdivision (a):** "[S]hould grant" was changed to "shall grant."

"[T]he movant shows that" was added.

Language about identifying the claim or defense was moved up from subdivision (c) (1) as published.

**Subdivision (b):** The specifications of times to respond and to reply were deleted.

Words referring to an order "in the case" were deleted.

**Subdivision (c):** The detailed "point-counterpoint" provisions published as subdivision (c)(1) and (2) were deleted.

The requirement that the court give notice before granting summary judgment on the basis of record materials not cited by the parties was deleted.

The provision that a party may accept or dispute a fact for purposes of the motion only was deleted.

**Subdivision (e):** The language was revised to reflect elimination of the point-counterpoint procedure from subdivision (c). The new language reaches failure to properly support an assertion of fact in a motion.

**Subdivision (f):** The provision requiring notice before denying summary judgment on grounds not raised by a party was deleted.

**Subdivision (h):** Recognition of the authority to impose other appropriate sanctions was added.

**Other changes:** Many style changes were made to express more clearly the intended meaning of the published proposal.

‹ Rule 55. Default; Default Judgment up Rule 57. Declaratory Judgment ›

Appellate Case: 21-3151    Document: 010110643594    Date Filed: 02/10/2022    Page: 116

West's Kansas Statutes Annotated
    Chapter 76. State Institutions and Agencies; Historical Property
      Article 1. General Provisions

K.S.A. 76-173

76-173. Same; designation of person in charge of trust funds; deposit in interest-bearing accounts

Currentness

The chief administrative officer of each institution shall designate an officer or employee of the institution to be in charge of the trust funds to which this act applies. The person so designated shall have custody and charge of all moneys belonging to and held by the institution for the use and benefit of each individual who is a student, client, member, patient or inmate of the institution. The person so designated shall deposit such moneys in one or more interest-bearing accounts in a bank, savings and loan association or federally chartered savings bank which bank, association or savings bank is insured by the federal government or an agency thereof, or invested in a credit union which is insured with an insurer or guarantee corporation as required under K.S.A. 17-2246, and amendments thereto and is designated by the pooled money investment board. Such moneys shall constitute a patient trust fund, inmate trust fund or other trust fund as the case may be.

**Credits**

Laws 1973, ch. 371, § 2; Laws 1976, ch. 58, § 8; Laws 1976, ch. 406, § 2; Laws 1984, ch. 342, § 1.

Notes of Decisions (1)

K. S. A. 76-173, KS ST 76-173
Statutes are current through laws enacted during the 2021 Regular Session of the Kansas Legislature effective on July 1, 2021. Some statute sections may be more current, see credits for details.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
    Chapter 76. State Institutions and Agencies; Historical Property
        Article 1. General Provisions

K.S.A. 76-175

76-175. Same; authorized investments for trust funds; disposition of interest

Currentness

(a) The person designated under K.S.A. 76-173, and amendments thereto, may invest the moneys of each trust fund in one or more certificates of deposit at a bank, savings and loan association or federally chartered savings bank, which bank, association or savings bank is insured by the federal government or an agency thereof, or invest in shares in a credit union which is insured with an insurer or guarantee corporation as required under K.S.A. 17-2246, and amendments thereto, and is designated by the pooled money investment board, except such money shall be subject to withdrawal within six months of date of placing on interest. The moneys so deposited shall continue to be a part of the trust fund from which the money originates.

(b) Interest earned on moneys invested under this section shall be regularly prorated according to procedures approved by the director of accounts and reports and credited to the individual patient, inmate or other account on the basis of the amount of money each patient, inmate or other person has in the trust fund.

(c) Notwithstanding the provision in this section for proration of interest to individual accounts, such interest may instead be allocated to the benefit fund of the institution under procedures specified by the director of accounts and reports if such an allocation is authorized under a letter of agreement to the secretary for children and families or the secretary for aging and disability services, as applicable, from the federal social security administrator and filed with the director of accounts and reports.

**Credits**
Laws 1973, ch. 371, § 4; Laws 1976, ch. 406, § 4; Laws 1984, ch. 342, § 2; Laws 2014, ch. 115, § 410, eff. July 1, 2014.

K. S. A. 76-175, KS ST 76-175
Statutes are current through laws enacted during the 2021 Regular Session of the Kansas Legislature effective on July 1, 2021. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
    Chapter 58A. Kansas Uniform Trust Code (Refs & Annos)
        Article 7. Office of Trustee (Refs & Annos)

K.S.A. 58a-709

58a-709. Reimbursement of expenses

Currentness

(a) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for:

(1) Expenses that were properly incurred in the administration of the trust; and

(2) to the extent necessary to prevent unjust enrichment of the trust, expenses that were not properly incurred in the administration of the trust.

(b) An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.

**Credits**
Laws 2002, ch. 133, § 57.

**Editors' Notes**

**UNIFORM TRUST CODE COMMENTS**

A trustee has the authority to expend trust funds as necessary in the administration of the trust, including expenses incurred in the hiring of agents. *See* Sections 807 (delegation by trustee) and 816(15) (trustee to pay expenses of administration from trust).

Subsection (a)(1) clarifies that a trustee is entitled to reimbursement from the trust for incurring expenses within the trustee's authority. The trustee may also withhold appropriate reimbursement for expenses before making distributions to the beneficiaries. *See* Restatement (Third) of Trusts Section 38 cmt. b (Tentative Draft No. 2, approved 1999); Restatement (Second) of Trusts Section 244 cmt. b (1959). A trustee is ordinarily not entitled to reimbursement for incurring unauthorized expenses. Such expenses are normally the personal responsibility of the trustee.

As provided in subsection (a)(2), a trustee is entitled to reimbursement for unauthorized expenses only if the unauthorized expenditures benefitted the trust The purpose of this provision, which is derived from Restatement (Second) of Trusts Section 245 (1959), is not to ratify the unauthorized conduct of the trustee, but to prevent unjust enrichment of the trust. Given this purpose, a court, on appropriate grounds, may delay or even deny reimbursement for expenses which benefitted the trust. Appropriate grounds include: (1) whether the trustee acted in bad faith in incurring the expense; (2) whether the trustee knew that the expense was inappropriate; (3) whether the trustee reasonably believed the expense was necessary for the preservation of the trust estate; (4) whether the expense has resulted in a benefit; and (5) whether indemnity can be allowed without defeating or impairing the purposes of the trust. *See* Restatement (Second) of Trusts Section 245 cmt. g (1959).

Subsection (b) implements Section 802(h)(5), which creates an exception to the duty of loyalty for advances by the trustee for the protection of the trust if the transaction is fair to the beneficiaries.

Reimbursement under this section may include attorney's fees and expenses incurred by the trustee in defending an action. However, a trustee is not ordinarily entitled to attorney's fees and expenses if it is determined that the trustee breached the trust. *See* 3A Austin W. Scott & William F. Fratcher, The Law of Trusts Section 245 (4th ed. 1988).


Notes of Decisions (1)

K. S. A. 58a-709, KS ST 58a-709
Statutes are current through laws enacted during the 2021 Regular Session of the Kansas Legislature effective on July 1, 2021. Some statute sections may be more current, see credits for details.

---

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or Preempted  Unconstitutional as Applied by  Siggers-El v. Barlow,  E.D.Mich.,  Apr. 10, 2006

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
Title 42. The Public Health and Welfare
Chapter 21. Civil Rights (Refs & Annos)
Subchapter I-A. Institutionalized Persons

42 U.S.C.A. § 1997e

§ 1997e. Suits by prisoners

Effective: March 7, 2013

Currentness

**(a) Applicability of administrative remedies**

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**(b) Failure of State to adopt or adhere to administrative grievance procedure**

The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.

**(c) Dismissal**

**(1)** The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

**(2)** In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

**(d) Attorney's fees**

**(1)** In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 [1] of this title, such fees shall not be awarded, except to the extent that--

**(A)** the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 [1] of this title; and

**(B)(i)** the amount of the fee is proportionately related to the court ordered relief for the violation; or

**(ii)** the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

**(2)** Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

**(3)** No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

**(4)** Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 [1] of this title.

**(e) Limitation on recovery**

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

**(f) Hearings**

**(1)** To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

**(2)** Subject to the agreement of the official of the Federal, State, or local unit of government with custody over the prisoner, hearings may be conducted at the facility in which the prisoner is confined. To the extent practicable, the court shall allow counsel to participate by telephone, video conference, or other communications technology in any hearing held at the facility.

**(g) Waiver of reply**

**(1)** Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law. Notwithstanding any other law or rule of procedure,

such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.

**(2)** The court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits.

**(h) "Prisoner" defined**

As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

## CREDIT(S)

(Pub.L. 96-247, § 7, May 23, 1980, 94 Stat. 352; Pub.L. 103-322, Title II, § 20416(a), Sept. 13, 1994, 108 Stat. 1833; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 803(d)], Apr. 26, 1996, 110 Stat. 1321, 1321-71; renumbered Title I, Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; Pub.L. 113-4, Title XI, § 1101(a), Mar. 7, 2013, 127 Stat. 134.)

Notes of Decisions (1337)

## Footnotes

1       See Reference in Text note below.
42 U.S.C.A. § 1997e, 42 USCA § 1997e
Current through P.L. 117-80.

---

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---